UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN GRAPHICS INSTITUTE, INC.,

Plaintiff,

v.

ACQUIRED LEARNING, INC., JUDEANN
STIPE, DEAN NOVOSAT, CLARK
EDWARDS, SAGE ADVICE, LTD., and
CARL LEINBACH,

Defendants.

Civil Action No.

# 05 CA 11857 JLT

## AFFIDAVIT OF CHRISTOPHER SMITH

CHRISTOPHER SMITH states under oath as follows:

1.    I am the president and co-founder of Plaintiff American Graphics Institute, Inc.

("AGI").

2.    In 1995, I co-founded Cyber Solutions, Inc. ("Cyber"). In 2000, Cyber changed

its name to American Graphics Institute, Inc.

3.    I reside at 38 York Street, Andover, Massachusetts and am domiciled in

Massachusetts.

4.    AGI is a Massachusetts corporation with its principal place of business at 444

Washington Street Suite 412, Woburn, Massachusetts.

5.    AGI is engaged in the business of providing consulting services and computer

training courses. AGI specializes in providing software applications training for the Internet,

print and video publishing and communications industries.

6.     AGI has training facilities throughout the country in, for example, Pennsylvania, New York and Massachusetts.

7.     I have worked with electronic publishing software and in the publishing industry for twenty years.

8.     I am an Adobe Certified Expert for several Adobe software programs including Adobe Acrobat and Adobe InDesign, an industry benchmark indicating proficiency.

9.     I am a Certified Technical Trainer, having passed certification standards including both an exam and practical observance of my instructional techniques.

10.    I have personally authored, co-authored, and edited more than fifteen books relating to electronic publishing.

11.    I travel extensively for AGI to assist major publishers and publishing technology firms use and integrate publishing systems across North America and internationally.

12.    In addition to my work domestically, I have delivered presentations on behalf of AGI to clients in England, Italy, France, and Australia relating to electronic publishing software.

13.    I am the director of content for a major technology conference relating to Adobe PDF technology held annually in Orlando, Florida. The conference attracts attendees from Asia, Europe, Australia, Africa, and the Americas. Several of my books relate to Adobe PDF technology.

14.    My wife, Jennifer Smith, co-founded AGI with me, and she is an author or co-author of more than ten books relating to electronic publishing technology. She has more than twenty years of electronic publishing industry experience.

2

**AGI's Customer And Business Information Is Proprietary And Confidential**

15.    For more than ten years, Jennifer Smith and I have worked vigorously to develop meaningful and comprehensive relationships with companies around the world. Many individuals and companies are interested in AGI in particular because Jennifer Smith and I are prominent lecturers, authors, educators, and specialists in the publishing industry.

16.    Over the years, AGI has built a strong and positive reputation among publishers and industry professionals throughout the world. AGI has worked hard at gaining the trust of its clients. AGI has extensive client contacts, including client contacts at fortune five hundred companies, print, video and Internet publishing companies, law firms, technology companies and universities.

17.    AGI's long-time customers in the publishing industry include, for example, The New England Journal of Medicine, Time Inc., Houghton Mifflin, Pearson, The New York Times, Reebok, New Balance, Raytheon, and thousands of other firms.

18.    AGI's client contact information is proprietary and very confidential to AGI.

19.    AGI's client contact information is stored in a secured, password protected database systems. AGI has two password protected database systems. One is its confidential customer database system, and the other is its confidential scheduling database system. These database systems include sensitive information about contact persons for AGI's clients, information about the software AGI's client's use, information about AGI's past relationship with its clients, and information about prospective future engagements with its clients. In addition, information about AGI's specific customers are stored in the database systems, such as the name of the person in charge of discussing training services at the company, as well as that person's e-mail, telephone number and address. The databases also include detailed information

3

about the about each particular client, such as the versions of software used by the client, the computer platform used, the client's historical record of hiring outside training services, the client's preferred payment methods, the client's billing terms, the client's credit card numbers, the client's pending inquiries, the dates inquiries were made and by whom within the client organization, individuals in charge of making decisions to hire outside consulting and training firms, where the client was met, and which instructors have previously delivered training or provided consulting services. Inquiries for pending business engagements are also stored in this secured, password protected database and in the scheduling database.

20.     AGI's customer records database started with less than 100 records more than a decade ago. Over the last ten years, AGI has invested millions of dollars and thousands of hours to build the customer database into the 63,000 current, past, and prospective clients that AGI services. These include prospective clients that we have met at conferences and tradeshows, actual clients for whom we have delivered services, along with strategic business partners. The time and cost to create this enormous database has been significant, and it is the single most valuable asset of AGI.

21.     The information contained in AGI's databases is not public knowledge.

22.     AGI's clients consider the information they share with us to be confidential. AGI has confidentiality and non-disclosure agreements with many of its clients which preclude dissemination of the information stored in our database records. Attached as Exhibit A are examples of confidentiality agreements AGI has with two of its clients. These examples have been redacted to preserve the identity of the customers.

4

23.     Anyone unfamiliar with the location, IP address, port number, password methods and security protocols used by AGI would not be able to access AGI's secured password protected databases.

24.     AGI employees are provided with access to AGI's database systems on a need-to-know basis. Only select AGI employees are provided access to AGI's database records, and even those that are provided with access may only have tiered access privileges, with only management being provided full database access to the database systems.

25.     Only sales personnel and some management are provided with access to AGI's customer records database. The database is secured by passwords, and only authorized users are provided with the special software, password, or location of the databases. Even some senior management are not all provided access to this information. For example, the Vice President of Training, a long-time employee of AGI is not provided with access to AGI's customer database.

26.     AGI has procedures for revoking access privileges to the database records for employees who leave the company.

## Judeann Stipe Working At AGI

27.     Defendant Judeann Stipe was previously an employee of Cyber and AGI. She was hired by me on April 10, 1996, as a part-time employee for Cyber, working two days per week providing clerical support. In October of 1999, Stipe moved into a sales capacity, becoming AGI's only sales representative with the title of Director of Sales. At this time, she was working full-time. From November 26, 2003 through January 11, 2004, Judeann Stipe received maternity leave from her job. Upon her return, Stipe was provided with a position as Senior Sales Executive, managing 100 accounts for AGI. On June 1, 2004, Stipe became a part-time employee at her request.

5

28.     At all times while employed by AGI, Stipe received a base salary plus bonus
payments, vacation, retirement pay and when she became a sales representative she also received
additional commission payments for sales activities.

29.     Stipe was also responsible at AGI for ensuring that certain employees and
consultants signed the appropriate receipt and acknowledgement of AGI's Employee Manual.
The Receipt and Acknowledgement includes a confidentiality acknowledgement. For example,
attached as Exhibit B is a true and accurate copy of a receipt and acknowledgment that Stipe had
Carl Leinbach sign after he had reviewed the AGI Employee Manual when he was working for
AGI. Carl Leinbach was an instructor working for AGI on a consulting basis.

30.     As an employee of AGI, Stipe received an AGI laptop computer that she was to
use while working for AGI.

31.     As a sales employee, Stipe was originally given "read only" access to AGI's
customer database system in Woburn, Massachusetts. When she was promoted to a management
position, she was provided with full access to AGI's customer database system. As part of the
AGI management team, Stipe held a position of trust and confidence. Stipe's full access to the
customer database system enabled her to edit, export and delete records. To access the database
system, Stipe was aware of the location, IP address, port number, password methods and security
protocols used by AGI.

32.     I informed Stipe on multiple occasions throughout her employment to take
safeguards to not share customer database information with anyone outside of AGI. For
example, I advised her to never make copies of AGI's customer database except when providing
the mailing list to AGI's confidential mailing service, which sends publications for AGI to its
active and potential customers. AGI used a bonded mailing service, and the service was

6

informed that the mailing list was confidential and agreed to not share or otherwise distribute the list.

33.     Stipe resigned her position with AGI on June 28, 2004. Stipe's last day with AGI was on July 1, 2004. Stipe told me and other AGI management personnel that the reason she was leaving AGI was to become a full-time "homemaker" and remain at home in the Summer of 2004 after she resigned her position with AGI.

34.     Following Stipe's resignation, in accordance with AGI's procedures, on July 1, 2004, Stipe's passwords were revoked. AGI has procedures for revoking access privileges to the database systems when an employee that had access to the database leaves the company.

35.     However, unbeknownst to me and other AGI management, immediately after Stipe's resignation at AGI, she began working for the newly formed defendant corporation, Acquired Learning, Inc. ("Defendant ALI").

36.     Defendant ALI is also actively engaged in the business of providing consulting services and training courses related to computers, software, and electronics.

37.     In an attempt to confuse AGI's customers, Defendant ALI began operating from the same premises occupied and formerly leased by AGI, using a similar acronym, ALI, to identify their business.

## Copyright Infringement Suit

38.     In the Fall of 2004, I discovered that Stipe did not in fact intend to become the full-time "homemaker" she said she wanted to be after resigning from AGI. Instead, she began working for Defendant ALI, which was a newly formed company, in direct competition with AGI.

7

39.    Defendant ALI was formed on July 19, 2004 by Clark Edwards and Dean Novosat. Clark Edwards is a former employee of AGI, and he was the former treasurer of Cyber. Dean Novosat, D/B/A, Sage Advice, Ltd. formerly provided consulting services to AGI.

40.    In the late Fall of 2004, I discovered that Acquired Learning, Inc. and its partner, System Solutions, Inc. had copied significant portions of AGI's website onto their respective websites without AGI's permission. As a result of this unauthorized use of AGI's copyrighted and proprietary content, AGI and I initiated a copyright infringement and unfair competition lawsuit in this Court against Acquired Learning Inc, System Solutions, Inc., Judeann Stipe, Dean Novosat, Clark Edwards and the president of System Solutions, Inc., Richard Wein, Civil Action No. 04-12611-JLT.

41.    Though the course of discovery, I reviewed non-confidential documents produced by defendants and third parties. In August 2005, I reviewed documents produced by Carl Leinbach, and I realized that Stipe had been directing him to access AGI's scheduling database to gather AGI's customer information for Acquired Learning, Inc.

42.    From November 2000 through September 2001, Carl Leinbach worked full-time as an instructor in software training for AGI.

43.    As an employee of AGI, Leinbach was required to have contacts with AGI customers as part of his duties. As such, Leinbach was provided with scheduling software and secure login information to access AGI's scheduling database. Leinbach needed to access AGI's scheduling database because AGI used this database to record important information about its customers' specific contact persons and scheduling information for courses.

44.    In September 2001, Leinbach requested that instead of being a full-time employee at AGI, he would prefer to work on a contracting basis.

8

45.    AGI allowed Leinbach to continue to have access to its scheduling database while he was a contractor because he still needed to be able to access the customer information in order to provide contracting services for AGI and its customers.

## Stipe Directed Leinbach To Access AGI's Confidential Scheduling Database And Retrieve From The Database Information About AGI's Customer Harley-Davidson, Inc.

46.    Attached as Exhibit C are copies of e-mail correspondence between Leinbach and Stipe. In an August 1, 2004 e-mail, Stipe requests that Leinbach send her customer contact information for Harley-Davidson, Inc., a prominent AGI client for whom Leinbach was delivering training on behalf of AGI as a contract instructor.

47.    Stipe sent this August 1, 2004 e-mail from her Acquired Learning e-mail account just over one month after she quit working for AGI.

48.    AGI had a business relationship with Harley-Davidson and anticipated financial benefit to be derived from this relationship.

49.    Stipe, a former AGI employee, knew of AGI's business relationship with Harley-Davidson.

50.    It appears that Stipe wanted the contact information for Harley-Davidson so that she could try to make a sale on behalf of AGI's competitor, Acquired Learning.

51.    In reply to Stipe's August 1, 2004 e-mail on August 2, 2004, Leinbach sent Stipe the name of AGI's customer contact at Harley-Davidson, his e-mail address, his physical address and his telephone number. In addition, Leinbach sent Stipe information about the types of AGI courses Harley-Davidson had received from AGI in the past, and the types of AGI courses Harley-Davidson wanted to receive from AGI in the future. Leinbach also sent Stipe information about the AGI instructors that were handling the courses.

9

52.    Leinbach obtained this information about AGI's confidential customer by logging

onto AGI's scheduling database. At Stipe's request, he then sent to her, AGI's confidential

information for Harley-Davidson.

53.    To access AGI's confidential customer scheduling database, Leinbach would have

had to execute AGI's scheduling software and entering his user name and password at the login

screen. Once he was logged-in, he could access the confidential customer record for Harley-

Davidson, as well as Leinbach's teaching schedule, and copied the relevant customer information

for Harley-Davidson, which he sent to Stipe in reply to her August 1, 2004 e-mail.

54.    After I reviewed this e-mail correspondence in August 2005 between Leinbach

and Stipe, I became suspicious that Stipe may have attempted on other occasions to obtain AGI's

confidential customer information. As a result, I investigated the possibility that Stipe and others

may have attempted to access AGI's customer information. On September 1, 2005, I engaged

Elysium Digital, LLC a forensic company, to analyze AGI's computer systems to determine if its

systems have ever been compromised.

## On Several Occasions In The First Week Of July, Judeann Stipe Wrongfully Exported AGI's Confidential Customer And Business Information From AGI's Servers In Woburn, Massachusetts

55.    When Stipe worked for AGI, she often worked out of AGI's Lancaster,

Pennsylvania office. Only Stipe and her assistant, Jeff Tauzin, who was employed by AGI, were

working from that location in June of 2004 before Stipe resigned. When Stipe resigned from

AGI on June 28, 2004, I requested that she send us the laptop AGI allowed her to use at AGI's

offices in Woburn, Massachusetts.

10

56.     Shortly after learning in mid August 2005 what Stipe had done with Carl Leinbach, I reviewed the contents of the AGI laptop that Stipe was using while she was working for AGI.

57.     During the course of my investigation of the laptop and AGI's server, I learned that Stipe logged-onto AGI's database system and exported customer database files to the laptop after she was no longer an employee of AGI.

58.     On July 2, 2004 at or about 08:51:06 AM, and 09:06:52 AM and 09:07:35 AM, Stipe accessed AGI's secured, password protected computers without authorization, using forged passwords, and took information from the protected computer using interstate communication. For example, attached as Exhibit D is a screenshot of AGI's Server Event Log showing that Stipe logged-on to AGI's secure, password protected customer database multiple times on July 2, 2004, just a few days after her last day at AGI. Stipe broke into the AGI customer database, "custdb.fp5," a password protected database stored on AGI's file server in Woburn, Massachusetts from a computer in Lancaster, Pennsylvania.

59.     At a time when Stipe was no longer an employee of AGI, and she accessed AGI's secured on July 2, 2004, password protected customer database for the purpose of wrongfully downloading and converting customer records.

60.     Specifically, on July 2, 2004, Stipe exported AGI's customer information for New York, Delaware, New Jersey, Maryland, and Washington D.C. For example, attached as Exhibit E is a screen shot of the recent files on the AGI laptop computer that Stipe was using showing the shortcut tabs to downloads of AGI's customer lists from the database for AGI's customers in New York, Delaware, New Jersey, Maryland, Pennsylvania and Washington D.C, which were last modified between 9:09 AM and 9:16 AM, on July 2, 2004.

11

61.    Attached as Exhibit F is a screenshot of the file properties of the shortcut tab to a download of AGI's customer list from the database for AGI's customers in Pennsylvania. In particular, on July 2, 2004 at or about 09:09 AM Judeann Stipe downloaded AGI's customer list of more than 8,000 Pennsylvania customer names, addresses, phone numbers, and e-mail addresses and stored it on the desktop of her laptop computer in a file called "PA Cust.tab." The files were downloaded from the AGI server in Woburn, Massachusetts to the computer Stipe was using in Lancaster, Pennsylvania.

62.    Attached as Exhibit G is a screenshot of the file properties of the shortcut tab to a download of AGI's customer list from the database for AGI's customers in New Jersey. In particular, on July 2, 2004 at or about 09:12 AM Judeann Stipe downloaded AGI's customer list of more than 4,000 New Jersey customer names, addresses, phone numbers, credit card records, and e-mail addresses and stored it on the desktop of her laptop computer in a file called NJ Cust.tab. The files were downloaded from the AGI server in Woburn, MA to Stipe's computer in Lancaster, PA.

63.    Attached as Exhibit H is a screenshot of the file properties of the shortcut tab to a download of AGI's customer list from the database for AGI's customers in Maryland. On July 2, 2004 at or about 09:13 AM Judeann Stipe downloaded AGI's customer list of more than 2,000 Maryland customer names, addresses, phone numbers, credit card records, and e-mail addresses and stored it on the desktop of her laptop computer in a file called "MD Cust.tab." The files were downloaded from the AGI server in Woburn, MA to Stipe's computer in Lancaster, PA.

64.    Attached as Exhibit I is a screenshot of the file properties of the shortcut tab to a download of AGI's customer list from the database for AGI's customers in Washington, DC. On July 2, 2004 at or about 09:14 AM Judeann Stipe downloaded AGI's customer list of more than

12

600 Washington, DC customer names, addresses, phone numbers, credit card records, and e-mail addresses and stored it on the desktop of her laptop computer in a file called "DC Cust.tab." The files were downloaded from the AGI server in Woburn, MA to Stipe's computer in Lancaster, PA.

65.     Attached as Exhibit J is a screenshot of the file properties of the shortcut tab to a download of AGI's customer list from the database for AGI's customers in Delaware. On July 2, 2004 at or about 09:14 AM Judeann Stipe downloaded AGI's customer list of more than 400 Delaware customer names, addresses, phone numbers, credit card records, and e-mail addresses and stored it on the desktop of her laptop computer in a file called "DE Cust.tab." The files were downloaded from the AGI server in Woburn, MA to Stipe's computer in Lancaster, PA.

66.     Attached as Exhibit K is a screenshot of the file properties of the shortcut tab to a download of AGI's customer list from the database for AGI's customers in New York. On July 2, 2004 at or about 09:16 AM Judeann Stipe downloaded AGI's customer list of more than 7,500 New York customer names, addresses, phone numbers, credit card records, and e-mail addresses and stores it on the desktop of her laptop computer in a file called "NY Cust.tab." The files were downloaded from the AGI server in Woburn, MA to Stipe's computer in Lancaster, PA.

67.     As shown in Exhibit L, on July 2, 2004 at or about 09:53 AM Judeann Stipe logged off the AGI customer database. She had logged off of AGI's cusomter database after she had downloaded more than 22,500 customer records, including 14,000 e-mail records from AGI's secured servers and copied them to her laptop computer in Lancaster, PA.

68.     On or about July 2, 2004, Stipe attempted to hide her wrongful activities by reinstalling the operating system on the laptop computer issued to Stipe by AGI. Attached as

13

Exhibit M is a log from the laptop computer issued to Judeann Stipe by AGI showing the operating system being reinstalled to overwrite and obscure malicious activities.

69.    There was no reason to reinstall an operating system on a computer that no longer belonged in Stipe's possession, and was to be returned to AGI. Stipe reinstalled the operating system before returning the computer to AGI in an attempt to cover her tracks.

## On Several Occasions in July and August of 2004, Judeann Stipe And Others Associated With Acquired Learning, Inc. And Sage Advice, Ltd. Wrongfully Exported AGI's Confidential Customer And Business Information From AGI's Servers In Woburn, Massachusetts

70.    Elysium Digital, LLC analyzed AGI's server to determine if they had been compromised. AGI's server hosts its confidential customer database and scheduling database.

71.    Based on Elysium Digital's review and analysis of the AGI server, I understand that Judeann Stipe, Dean Novosat or Clark Edwards accessed AGI's server on multiple occasions in July and August and opened AGI's customer database system.

72.    In particular, on July 12, 2004 at or about 1:24 PM Judeann Stipe, Dean Novosat or Clark Edwards using forged passwords broke into the AGI customer database, (custdb.fp5), a password protected database stored on AGI's file server in Woburn, MA using the user name Sage Advice from the IP address 68.82.227.55 for the purpose of downloading customer records, e-mail addresses, and customer credit card information. Stipe had ended her employment 14 days prior to this break-in to AGI's computer systems. Attached as Exhibit N is a screenshot of AGI's Server Event Log showing that a user by the name of "Sage Advice" logged-on to AGI's secure, password protected customer database on July 12, 2004.

73.    None of these individuals were authorized to access the password protected database.

14

74.   Sage Advice is the name of a computer consulting firm run by Novosat and Edwards.

75.   On July 12, 2004 at or about 1:27 PM Judeann Stipe, Dean Novosat or Clark Edwards log-off the AGI's password protected customer database under the user name "Sage Advice" from the IP address 68.82.227.55. after having viewed copied or downloaded more than 63,000 confidential AGI customer records and other AGI confidential information. Attached as Exhibit O is a screenshot of AGI's Server Event Log showing that a user by the name of "Sage Advice" logged-off of AGI's secure, password protected customer database on July 12, 2004.

76.   On July 14, 2004 at 20:36, Judeann Stipe, Dean Novosat or Clark Edwards using forged passwords broke into the AGI customer database, (custdb.fp5), a password protected database stored on AGI's file server in Woburn, MA using the user name "Sage Advice" from the IP address 68.82.227.55. None of these individuals were authorized to access the database. Stipe had ended her employment 16 days prior to this break-in to AGI's computer systems. Attached as Exhibit P is a screenshot of AGI's Server Event Log showing that a user by the name of "Sage Advice" logged-on to AGI's secure, password protected customer database on July 14, 2004.

77.   On July 12, 2004 and again on July 14, 2004 Judeann Stipe sent e-mail messages to various AGI employees, including me, Jennifer Smith, and Shannon McGurty. These e-mails are attached as Exhibit Q. The e-mail messages recorded the IP address of Stipe's computer. These e-mail messages were sent by Stipe on the same days on which Stipe and others were wrongfully accessing AGI's secured, password-protected servers. The IP address of her e-mail messages *matches* the IP address of the computer used to access AGI's secured, password-protected servers and database.

78.   Defendants Stipe, Novosat, Edwards and ALI had no authorization to access these databases and their actions clearly indicate that they knew they had no authorization.

79.   Defendants Stipe, Novosat, Edwards and ALI acted purposely to acquire information to which they knew they were not entitled, for the purpose of securing unfair and unlawful profits for themselves. Through their unauthorized access to AGI's computer databases, they obtained AGI's valuable confidential business information and other confidential proprietary information, and used the information to solicit new customers.

## AGI Has Incurred Remedial And Investigative Expenses Exceeding $5,000 That Are Directly Attributable To Defendants' Unalawful Accessing AGI's Servers

80.   As a result of defendants' unlawful activities, AGI has incurred remedial and investigative expenses exceeding $5,000 that are directly attributable to Defendants' unauthorized access to AGI's trade secrets and confidential information. Specifically, when AGI suspected the security breach, it engaged its information technology ("IT") service provider to reset permissions, passwords, and security privileges, spending an estimated $5,000. AGI also hired Elysium Digital, LLC to determine whether AGI's computer systems have been compromised. To date, the cost incurred by AGI for Elysium has been $550 for testing and site visit preparations, $1,555 for onsite review and analysis of data gathered, totaling $2,105. Also, in order to remedy the breach, AGI is in the process of purchasing new routers and firewalls, which require setup and configuration from its IT provider, totaling an estimated $25,000. Thus, the remedial and investigative expenses incurred totaled to date are $7,105, and once the new firewalls and routers are in place, AGI's total remedial and investigative expenses will be at least $32,105.

16

81.    In 2004 and 2005 Stipe, Novosat, Edwards, and Acquired Learning used wrongfully converted AGI customer records to send bulk-e-mail (SPAM) to AGI customers in an effort to solicit business for their company, Acquired Learning. This list has been used repeatedly to send thousands of unsolicited SPAM messages to AGI customers using the customer list misappropriated by Stipe, Novosat and Edwards. Attached as Exhibit R is an example of one such unsolicited e-mail.

## Defendants Cumulative Acts Have Assisted Them Interfering With The Relationship Between AGI And At least Two Customers, Worth More Than $1.25 Million To AGI

82.    The Defendants cumulative acts have assisted them in interfering with the relationship between AGI and Education Testing Service, Inc. ("ETS"), and AGI and Adobe Systems, Inc. ("Adobe"). The relationships with these two clients alone have earned AGI more than approximately $1.25 million.    Attached as Exhibit S is a billing history of AGI's sales to Adobe Systems. Attached as Exhibit T is a billing history of AGI's sales to ETS.

83.    Adobe used to be one of AGI's most prominent clients. It is well known that Adobe is a multinational corporation. AGI's work with Adobe Systems was spread out over dozens of Adobe personnel throughout the country, such as in New York, New York, Seattle, Washington, and San Jose, California. AGI had stored its specific client contacts with Adobe Systems personnel in its customer database, which was hosted on the AGI server. Defendants had no previous contact with any of AGI's particular Adobe contacts. Defendants used AGI's particular Adobe contacts to usurp AGI's Adobe business opportunities. Defendant ALI has taken over much of the work that AGI did for these particular clients at Adobe. Without defendant ALI's use of AGI's customer list, which identifies AGI's particular Adobe contacts,

17

defendant ALI would not have been able to have made these sales to these particular Adobe contacts.

84.     In the month of June 2004, while receiving full time pay, vacation, and other benefits from AGI, Stipe received sales orders and inquiries from ETS and other inquiries. Orders received by Stipe in June 2004 were deliberately withheld from AGI's management and accounting department, and were wrongfully diverted and converted by Defendants Stipe, Novosat, Edwards, and ALI.

85.     In particular, without AGI's management's knowledge, while Judeann Stipe was still working for AGI she used AGI's resources to make sales to AGI's customer ETS not for AGI, but for her new competing company, Defendant ALI. For example, attached as Exhibit U are June and July 2004 e-mail correspondence from Judeann Stipe at her AGI e-mail address to Leslie Schenkel, an AGI customer contact at Education Testing Services ("ETS").

86.     On June 21, 2004, Leslie Schenkel at ETS wrote in an e-mail to Judeann Stipe, at her AGI email address stating, "I'm ready to start booking everything. InDesign will be 6-7 classes during August OSX Demo/CS Suite overview for July 20th." Stipe was an employee of AGI at the time of this message.

87.     In violation of AGI's standard sales procedures, Judeann Stipe never entered this customer confirmation for the July 20, 2004 training or the August 6-7, 2004 training classes into AGI's customer or scheduling databases. Stipe intentionally did not enter this information into AGI's order entry system because she was intending to wrongfully divert this sale to her new employer, Acquired Learning.

88.     On June 28, 2004 Stipe wrote to Leslie Schenkel at ETS indicating that "I am working from home today. I will call you this afternoon. I have some other good news to share

18

with you." The "good news" that Stipe shared is that she was going to work for the Defendant corporation ALI, and that she would deliver all of the July and August training for ETS through Defendant ALI – the training that Shenkel at ETS had previously requested that AGI deliver.

89.    On June 28, 2004, the same day that Stipe shared her so-called "good news" with Leslie Schenkel at ETS, Stipe also submitted her resignation to AGI.

90.    ETS had been a customer with AGI since at least April 9, 1998. ETS had provided AGI with over six years of business totaling over $150,000. Stipe diverted AGI's customer ETS to her new company, Defendant ALI. Consequently, AGI has lost all of its business with ETS.

91.    Immediately after resigning from AGI, Stipe instead went to work for Acquired Learning, which was formed in 2004 with the intent of offering services identical to those of AGI.

92.    Ten days after Judeann Stipe left AGI, on July 11, 2004, she e-mailed Leslie Schenkel at ETS using her new Acquired Learning e-mail account to "to thank her for the support," and tell her "It means a lot to me to have you follow me and help get things off to a great start." Attached as Exhibit V is a copy of this e-mail.

93.    On July, 12, 2004 and July 13, 2004, Judeann Stipe and Leslie Schenkel at ETS corresponded to discuss the new pricing options and new dates for the scheduled training. This e-mail correspondence is attached as Exhibit W.

94.    On July 16, 2004, Judeann directed Acquired Learning to invoice ETS for the training orders she received while employed at AGI and that she deliberately withheld from AGI. Acquired Learning issued invoice number 1 in the amount of $7,200 to ETS for Acquired Learning to deliver the InDesign Training on August 11, 12, 13, 16, and 17 which Schenkel had

19

requested AGI to deliver. (Exhibit X.) This was 15 days after Stipe's resignation from AGI. In response, Acquired Learning issued invoice number 2 in the amount of $1,500 to ETS. Attached as Exhibit Y are the invoices.

Signed this 13th day of September 2005 under the pains and penalties of perjury.

Christopher Smith

573814_1.DOC

20

# REDACTED



May 27, 2005

Jennifer Smith
American Graphics Institute
444 Washington St, Suite 412
Woburn, MA 01801

Dear Jennifer,

In connection with consulting and support services (the "Services") to be provided by American Graphics Institute ("you") with respect to designated applications, (⬤) may provide you with certain confidential or proprietary information about⬤ including without limitation technical and administrative information about⬤ telecommunications infrastructure, servers, website; editorial, financial, marketing, circulation and advertising information; and information about⬤ strategy and business plans (all such confidential or proprietary information together with any documents or other materials prepared by you which contain or otherwise reflect such information is referred to herein as the "Confidential Information"). ⬤ may also provide you with access to⬤ telecommunications equipment, including Routers, Switches, hubs, PBX and ACD's as well as other servers, applications and systems used by⬤ (the "Network"). All information contained on the Network as well as anything you may observe through the Network or while at⬤ premises shall also be considered Confidential Information.

You agree that you will keep the Confidential Information confidential, and will not disclose any Confidential Information to any person other than to employees who need to know such Confidential Information for the purpose of performing the Services, who are informed of the confidential nature of the Confidential Information, and who have agreed to be bound by the terms of this Agreement.

You may use the Confidential Information solely for the purpose of performing the Services and not for any other purpose whatsoever.

You agree that you will not make any copies of any Confidential Information without the prior written consent of⬤ Upon the termination of your business relationship with⬤ or upon⬤ request at any time, you will return all of the Confidential Information to⬤ and will not retain any copies, extracts or reproductions, in whole or in part, of any Confidential Information in any form.

American Graphics Institute
5/27/05
Page 2

# REDACTED

You acknowledge and agree that access to the Network is being provided solely to facilitate your provision of the Services as contemplated by this Agreement. In no event shall you or any employee under your direction or control make any attempt (whether successful or not) to break into, hack, copy, reverse engineer or otherwise violate the integrity of the Network or to install or introduce any back door, time bomb, drop dead device, virus, Trojan horse, worm (all as such terms are broadly understood with respect to computers and computer or other data processing systems) or other destructive or disabling code or components of any kind designed to permit unauthorized access or to disable, erase, interfere with or otherwise harm the Network, or to perform similar actions. Without limitation of ▇▇▇ other remedies hereunder, at law, or in equity, you hereby agree to pay▇▇ an amount equal to any and all damages (without limitation as to type or kind) incurred by ▇▇ for any violation of this paragraph.

Neither this Agreement nor the disclosure or receipt of Confidential Information or access to the Network shall constitute or imply any promise, intention or commitment with respect to any present or future business transactions. The parties do not intend that any agency or partnership relationship be created between them by this Agreement.

No license, express or implied, is granted or conferred to you as a result of disclosure and use of Confidential Information or access to the Network, whether under any trademark, patent, copyright or any other intellectual property right or otherwise. You agree that all inventions, designs, programs, techniques, processes, assemblies of information, ideas and product developments developed or conceived by you that relate to the Confidential Information or access to the Network are the exclusive property of▇▇ and you agree that you shall execute any and all documents or instruments which may be deemed necessary or appropriate for purposes of transferring to▇▇ the rights therein.

You acknowledge that violation of any provision of this Agreement will cause irreparable injury to▇▇for which remedies at law would be inadequate. Therefore, without prejudice to the rights and remedies otherwise available, ▇▇shall be entitled to injunctive relief without the need to post a bond if you breach or threaten to breach any of the provisions of this Agreement. You agree to indemnify and hold▇▇, its affiliates, and each of their respective officers, directors, employees, successors and assigns harmless from and against any and all claims, damages, liabilities, costs, and expenses, including reasonable attorney's fees, arising out of any breach of your obligations, representations or warranties hereunder.

All additions or modifications to this Agreement must be made in writing and must be signed by both parties. No failure or delay by▇▇in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof

American Graphics Institute
5/27/05
Page 3

preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

This Agreement is made under, and shall be construed in accordance with, the laws of the State of New York. Any judicial proceeding arising out of this Agreement shall be brought in any state or federal court in New York County, and each of the parties hereto accepts the exclusive jurisdiction of such courts in connection with this Agreement.

Please confirm your agreement by signing and returning the enclosed copy of this letter.

Sincerely yours,

**REDACTED**

By:

Vice President,

Accepted and Agreed to:

American Graphics Institute

By:

Name: Christopher Smith

Title: President

## CONFIDENTIALITY AGREEMENT

Sandra Benedict
American Graphics Institute
11 East 44th Street
Suite 1500
New York, NY 10018

# REDACTED

June 13, 2005

Dear Sir::

  This letter, when signed by you and returned to ███████████ (the "Company" or "we"), will confirm our mutual agreement with respect to your treatment of the Confidential Information (defined below) to be delivered to you, and our treatment of Confidential Information to be delivered to the Company by American Graphics Institute ("AGI", " you" or "your").

  In consideration of our agreement to transmit certain information to you, and your agreement to transmit confidential information to us, we hereby agree as follows:

  **1.**  In order to assist you in your review of our request for a proposal for services, we may provide you, in our discretion, certain information which relates to the business of the Company, including design information, process information, financial information, product information, general employee information, as well as other related information; and AGI may provide the Company with process information, financial information, product information, general employee information, as well as other related information   (collectively, the "Confidential Information").

  **2.**  Both the Company and AGI hereby acknowledge and agree that all Confidential Information is secret, confidential and the exclusive property of its owner.  Neither party shall not use such information for any purpose other than as provided above.  You shall not disclose that you have provided, or shall provide, any service to the Company without our prior written consent. Either party shall be responsible for breaches of confidentiality of any employees, agents or independent contractors.

  **3.**  With respect to all Confidential Information received by either party and all copies and extracts thereof, and all documents and other media prepared by you which incorporates Confidential Information, both the Company and AGI agree to treat such Confidential Information (whether oral, written or otherwise) in accordance with the provisions of this letter and to take or abstain from taking certain other actions herein set forth.

**4.**      Either party shall advise the other immediately in the event of any loss or inadvertent disclosure of any Confidential Information.

**5.**      In the event that either party, or its employees, agents or independent contractors, receive a request to disclose all or any part of the information contained in the Confidential Information under the terms of a valid and effective subpoena or order issued by a court of competent jurisdiction or by a governmental or administrative body, the party in receipt of the subpoena will promptly notify the Company or AGI of the existence, terms and circumstances surrounding such a request so that the undersigned may seek a protective order or other appropriate remedy (and you will provide such cooperation in connection therewith as any of the undersigned may reasonably request) and/or waive compliance with the provisions of this Agreement. If such protective order or other remedy is not obtained, or the Company or AGI waives compliance with the provisions of this Agreement, the Company or AGI will furnish only that portion of the Confidential Information which, in the written opinion of your counsel, is legally required to be disclosed and will exercise your best efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the Confidential Information furnished.

**6.**      In the event that, for any reason, either party determines it is not interested in continuing a business relationship with the other, it shall immediately return all Confidential Information previously received by the other party and all related data and materials prepared by or for you. Furthermore, neither party shall retain any copies or other reproductions or extracts thereof. In addition, all documents, memoranda, notes, other writings and other reproductions whatsoever prepared by either party or its employees, in any form whatsoever, shall be destroyed immediately, and confirmation of such destruction shall be certified in writing to the undersigned. In addition, both parties shall have a continuing obligation to refrain from disclosing to any third party any information regarding the Services or the Confidential Information.

**7.**      This Agreement shall not create, and shall not be deemed to create, any obligation enforceable against the Company or AGI, including any obligation to negotiate an agreement.

**8.**      It is agreed that money damages would be an inadequate remedy for the breach of this Agreement, because it would be difficult to ascertain the amount of damages that would be suffered by the Company or AGI in the event of such breach. Therefore, both parties agree that the Company or AGI shall be entitled to equitable relief, including, without limitation, specific performance of this Agreement and injunctive relief against any breach hereof, as a remedy for any breach of this Agreement by either party to the agreement, without having to post any bond or any other form of security, show any likelihood of irreparable harm, or prove that money damages would be an inadequate remedy.

**9.** In the event that either party should institute proceedings to enforce any provision of this Agreement, we agree thatthe prevailing party in any action shall be entitled to recover all expenses relating to the enforcement of this Agreement, including reasonable attorneys' fees and costs, in addition to any other remedies. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or in any way invalidated by such court action.

**10.** It is further understood and agreed that no failure or delay by the Company or AGI in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

**11.** Both parties hereby agree to submit to the jurisdiction of any court of the State of New York or any federal court sitting in the State of New York for the purpose of any suit, action or other proceeding arising out of this Agreement, or of the transactions contemplated hereby, which is brought by or against the Company. We agree that this Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to the rules of the conflict of laws of any state.

**12.** This Agreement is not assignable by either party.

**13.** The provisions of this Agreement shall survive the termination of this Agreement.

Please indicate your agreement and acceptance with the foregoing by signing the enclosed copy of this letter and returning it to the undersigned.

Very truly yours,

REDACTED

Authorized Signature

Accepted and Agreed:

(Vendor company name)

By:_____
Authorized Signature
Name:_____

## RECEIPT AND ACKNOWLEDGMENT
of American Graphics Institute Employee Manual

Please read the following statements, sign below and return to your manager.

### Understanding and Acknowledging
### Receipt of American Graphics Institute Employee Manual

I have received and read a copy of the American Graphics Institute Employee Manual. I understand that the policies and benefits described in it are subject to change at the sole discretion of American Graphics Institute at any time.

### At-Will Employment

I further understand that my employment is at will, and neither myself nor American Graphics Institute has entered into a contract regarding the duration of my employment. I am free to terminate my employment with American Graphics Institute at any time, with or without reason. Likewise, American Graphics Institute has the right to terminate my employment, or otherwise discipline, transfer, or demote me at any time, with or without reason, at the discretion of American Graphics Institute. No employee of American Graphics Institute can enter into an employment contract for a specified period of time, or make any agreement contrary to this policy without the written approval from the President.

### Arbitration

I also acknowledge I have read and understand the Arbitration Policy contained in this Employee Manual and I agree to abide by the policy.

### Confidential Information

I am aware that during the course of my employment confidential information will be made available to me, for instance, product designs, marketing strategies, customer lists, pricing policies and other related information. I understand that this information is proprietary and critical to the success of American Graphics Institute and must not be given out or used outside of American Graphics Institute's premises or with non-American Graphics Institute employees. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

Employee's Printed Name _Carl Leinbach_

Position _Trainer_

Employee's Signature _Carl Leinbach_

Date _1/08/03_

4

| | |
|---|---|
| **From:** | Judeann Stipe |
| **To:** | Carl Leinbach; |
| **CC:** | |
| **Subject:** | Harley Contact |
| **Date:** | Sunday, August 01, 2004 9:52:34 PM |
| **Attachments:** | |

Hi Carl,
It was nice talking with you the other day.
I am looking forward to working with you again soon!
Please email me the Harley contact info you have.
Talk with you soon.
Judeann

| | |
|---|---|
| **From:** | Judeann Stipe |
| **To:** | Carl Leinbach; |
| **CC:** | |
| **Subject:** | Re: Harley Contact |
| **Date:** | Monday, August 02, 2004 9:24:12 AM |
| **Attachments:** | |

Thanks for this.

Remember to mark August 29th on your calendar. This is for the cookout at my house. Starts at 2:00, ends whenever everyone goes home. I hope you and your family can make it.

Let me know.
Take care,
Jude

> **From:** cleinbach@comcast.net
> **Date:** Mon, 02 Aug 2004 12:52:24 +0000
> **To:** Judeann Stipe <sales@acquiredlearning.com>
> **Subject:** Re: Harley Contact
>
> His name is Dale Toomey.
>
> dale.toomey@harley-davidson.com
>
> 1425 Eden Road
> York, PA 17402
> 717-852-6713
>
> They mentioned in passing something about Flash training in the future. They have an Illustrator session left at AGI, which I am not teaching. I'm not sure who is assigned to that one. I tried to access my schedule to update it, but it won't let me.
>
> Good talking with you, as well. Good luck to all of you. I wish you

only the best!

--

Carl Leinbach
cleinbach@comcast.net

-------------- Original message --------------

> Hi Carl,
>
> It was nice talking with you the other day.
> I am looking forward to working with you again
soon!
>
> Please email me the Harley contact info you have.
>
> Talk with you soon.
>
> Judeann
>



User "Judeann Stipe" [ 66.109.231.112 ] opening a connection using "FileMaker Pro 6.0v4 [N]" via "WinSock 32 TCP/IP 6.0v4".

Event ID: 9

Category: None

Computer: SERVER2

Data: ⦿ Bytes ○ Words





Event Properties

Date:        7/2/2004    Source:    FileMaker Server
Time:        8:51:06 AM  Category:  None
Type:        Information  Event ID:  28
User:        N/A
Computer:    SERVER2

Description:

User "Judeann Stipe" opening file "custdb.fp5".

Data:    ● Bytes  ○ Words

OK        Cancel        Apply



**Event Properties**

**Event**

| | | | |
|---|---|---|---|
| Date: | 7/2/2004 | Source: | FileMaker Server |
| Time: | 9:06:52 AM | Category: | None |
| Type: | Information | Event ID: | 9 |
| User: | N/A | | |
| Computer: | SERVER2 | | |

**Description:**

User "Judeann Stipe" [ 66.109.231.112 ] opening a connection using "FileMaker Pro 6.0v4 (N)" via "WinSock32 TCP/IP 6.0v4".

Data: ○ Bytes ○ Words

[ OK ]    [ Cancel ]    [ Apply ]



**Event Properties**

**Event**

| | | | |
|---|---|---|---|
| Date: | 7/2/2004 | Source: | FileMaker Server |
| Time: | 9:07:32 AM | Category: | None |
| Type: | Information | Event ID: | 9 |
| User: | N/A | | |
| Computer: | SERVER2 | | |

**Description:**

User "Judeann Stipe" [ 66.109.231.112 ] opening a connection using "FileMaker Pro 6.0v4 [N]" via "WinSock32 TCP/IP 6.0v4".

Data: ● Bytes ○ Words

OK    Cancel    Apply



Event Properties

Event

Date: 7/2/2004    Source: FileMaker Server
Time: 9:07:35 AM    Category: None
Type: Information    Event ID: 28
User: N/A
Computer: SERVER2

Description:

User "Judeann Stipe" opening file "custdb.fp5".

Data    Bytes    Words

OK    Cancel







**NJ Cust.tab Properties**    ? ✕

General | Shortcut |

📄 NJ Cust.tab

Target type:

Target location: Desktop

Target:         ents and Settings\Sales\Desktop\NJ Cust.tab"

Start in:       "C:\Documents and Settings\Judeann Stipe\Des

Shortcut key:   None

Run:            Normal window

Comment:

Find Target... | Change Icon... | Advanced...

OK | Cancel | Apply







**DE Cust.tab Properties**   ? X

| General | Shortcut |

DE Cust.tab

Target type:

Target location: Desktop

Target:     ents and Settings\Sales\Desktop\DE Cust.tab"

Start in:     ocuments and Settings\Judeann Stipe\Desktop"

Shortcut key:   None

Run:       Normal window

Comment:

[ Find Target... ]  [ Change Icon... ]  [ Advanced... ]

[ OK ]   [ Cancel ]   [ Apply ]







Event Properties                                              ? X

Event

Date:       7/2/2004    Source:     FileMaker Server
Time:       9:53:42 AM  Category:   None
Type:       Information Event ID:   10
User:       N/A
Computer:   SERVER2

Description:

User "Judeann Stipe" closing a connection. (15)

Data:   ⊙ Bytes   ○ Words

OK          Cancel          Apply



Event Properties

Event

Date: 7/12/2004    Source: FileMaker Server
Time: 1:24:07 PM    Category: None
Type: Information    Event ID: 28
User: N/A
Computer: SERVER2

Description:

User "Sage Advice" opening file "custdb.fp5".

Data: ● Bytes ○ Words



Event Properties

Event

Date:        7/12/2004    Source:    FileMaker Server
Time:        1:24:07 PM   Category:  None
Type:        Information  Event ID:  9
User:        N/A
Computer:    SERVER2

Description:

User "Sage Advice" [ 68.82.227.55 ] opening a connection using
"FileMaker Pro 6.0v1 [P]" via "TCP/IP OT Network 6.0v1".

Data: ○ Bytes ○ Words

[ OK ]    [ Cancel ]    [ Apply ]







Date:      7/14/2004    Source:    FileMaker Server
Time:      8:36:38 PM    Category:  None
Type:      Information    Event ID:  9
User       N/A
Computer:  SERVER2

Description:

User "Sage Advice" [ 68.82.227.55 ] opening a connection using "FileMaker Pro 6.0v1 [P]" via "TCP/IP OT Network 6.0v1".

Data:    • Bytes   ○ Words

OK          Cancel          Apply

---

**From:**  Eric Stipe [estipe@comcast.net]

**Sent:**  Monday, July 12, 2004 11:32 AM

**To:**  csmith@agitraining.com

**Cc:**  jsmith@agitraining.com

**Subject:** commission check

Hi,

Hope both of you are well and getting a chance to enjoy your vacation.

Chris, I understand you are coming in to Woburn today to meet with the new accounting person.
I already left a message for you regarding not getting my commission check. The only items I submitted on the June
report for actual business I closed and AGI invoiced. Terrell made sure the correct information was submitted to you by
July 2 so that payroll would not be held up. I also responded to your call immediately and faxed to you the paperwork
you could not find on July 6th. Do you still have a question> If so, please call me at home.

Can you please take care of this today so that it can get mailed so that I can receive as soon as possible?

Thanks,
Judeann

| From: | Eric Stipe [estipe@comcast.net] |
|---|---|
| Sent: | Wednesday, July 14, 2004 10:32 AM |
| To: | Shannon McGurty |
| Cc: | csmith@agitraining.com; 'Jen Smith'; Eric Stipe |
| Subject: | Re: Commission payment |
| Importance: | High |

Hi,

I reviewed this and there are some errors, I have them noted below. I spoke with Shannon today and she told me that I am not getting a check until next week? I was under the impression that all of this was being taken care of so that I could receive a check this week, as AGI held my check last pay period, therefore, missing the original date of July 9th.

Chris, please have this corrected/ok'd so that we can stay on track per our call earlier this week.
I really would appreciate AGI having Total Payroll doing a manual pay check for this week.

Thanks,
Judeann


,=On 7/14/04 10:02 AM, "Shannon McGurty" <smcgurty@agitraining.com> wrote:

Judeann,

Here is the commission breakdown you requested.

Paid
American Heritage Federal Credit Union : 695.00 @ 1% $6.95
American Institute for CPCU: 2,045.00 @ 1% $20.45 **SHOULD BE 3%**
Berks Homes: 1,390.00 @ 1% $20.45 **SHOULD BE 3%**
CNH: 726.50 @ 1% $7.27
Dechert LLP: 1,390.00 @ $13.90
Department of Veterans Affairs: 1,390.00 @ 1% $13.90 **SHOULD BE 3%**
DMN Direct: 2,700.00 @ 1% $27.00 **SHOULD BE 3%**
Hersam Acorn Newspaper: 1,895.00 @ 3% $56.85
IMS Health: 1,095.00 @ 1% $10.95
Merck-PA: 695.00 @ 3% $20.85
MIT Lincoln Lab: 3,875.00 @ 3% $116.25
Oberthur Card Systems: 1,195.00 @ 1% $41.64 **SHOULD BE 3%**
PA Lumbermens Insurance Association: 695.00 @ 1% $6.95
PennDot: 1,195.00 @ 1% $11.95 **SHOULD BE 3%**
SS Administration: 718.00 @ 3% $21.54
The Art Institute of Pittsburg: 1,500.00 @ 1% $15.00
Villanova University: 1,390.00 @ 1% $13.90
WGBH TV: 2,500.00 @ 3% $75.00
William Fox Monroe: 2,656.00 @ 1% $25.65
Total Check: $526.45

Not Paid
Adobe - WA: 10,000.00 @ 3% $300.00
Friedman LLP: 3,000.00 @ 3% $90.00
George Weston Bakeries Inc: 1,195.00 @ 1% $11.95
Glen-Gery Corporate Office: 695.00 @ 1% $6.95
Mead Westvaco: 2,590.00 @ 3% $77.70
New England Journal of Medicine: 600.00 @ 3% $18.00
Ogilvy & Mather: 3,842.00 @ 3% $115.26

Re: Commission payment

PA House of Rep: 2,990.00 @ 3% $89.70
Parson Brinckerhoff -NY: 1,295.00 @ 1% $12.95
Penn State Hershey Medical Ctr: 1,390.00 @ 3% $41.70
Raytheon: 695.00 @ 3% $20.85
Stop & Stop: 3,150.00 @ 3% $94.50
Time Inc Fortune Magazine: 1,250.00 @ 3% $37.50
Universal Supply Company: 1,195.00 @ 1% $11.95
Vanguard Group: 1,390.00 @ 3% $41.70
Total Amount Still Due: $970.71

The list is broken down into invoices that we have received payment for and ones we are still wanted for. I will checking you a check we our next pay period for $526.45, with no federal taken out. I will cut you a check on our next pay period for any payments we receive in that time. If you have any questions, please let me know

Regards,

Shannon McGurty
AGI Training
Financial Manager
Phone:  800-851-9237
        781-376-6044
Fax:    781-379-6047

www.agitraining.com

-----Original Message-----
**From:** Eric Stipe [mailto:estipe@comcast.net]
**Sent:** Tuesday, July 13, 2004 9:19 AM
**To:** christopher smith
**Cc:** 'Shannon McGurty'
**Subject:** Commission payment

Hi Shannon,

Can you please send me a report detailing what commissions are due to me and the amount I will be getting this week? Also, please do not take any federal taxes out of these checks.

Thanks,
Judeann

9/9/2005

**From:**        Judeann Stipe
**To:**
**CC:**
**Subject:**     Acquired Learning Opens New Training Centers
**Date:**        Wed., January 26, 2005 10:25:00 AM
**Attachments:**

---

Acquired Learning

## New Training Facilities Open in PA!

**1861 Charter Lane**
Lancaster

**376 Crooked Lane**
King of Prussia

For dates and to sign up call
717-735-3850.



Adobe
**Solutions Network**
Authorized Training Center

I just wanted to send a quick email to let you know that we have been busy opening two new training facilities in Pennsylvania and that our second location is **NOW OPEN** for business!

Acquired Learning now has two locations, one in Lancaster and one in King of Prussia. These state-of-the-art facilities are equipped with new, high-end PowerMacs, PowerBooks, and Pentium 4 class Windows XP machines.

Our curriculum currently lists 27 courses ranging from **Adobe InDesign** for Beginners, to Advanced **QuarkXPress, Dreamweaver, Flash, Final Cut Pro,** and the entire Adobe **Creative Suite**. We have almost two dozen experienced, certified instructors eager to teach you in these courses.

I encourage you to visit our website to see our course offerings.

We also offer **onsite training** in any of our listed classes. If you have a training requirement for software that we don't currently have on our list, simply call 717-735-3850 or email me at jstipe@acquiredlearning.com and I will develop a custom curriculum to meet your needs.

Sincerely,
Judeann Stipe

# American Graphics Institute
## Customer QuickReport
### January 1, 1996 through August 29, 2005

| | Type | Date | Amount |
|---|---|---|---|
| **Adobe** | | | |
| | Invoice | 10/08/1997 | 7,708.00 |
| | Invoice | 03/13/1998 | 12,500.00 |
| | Invoice | 04/17/1998 | 2,700.00 |
| | Invoice | 03/23/1999 | 5,000.00 |
| | Invoice | 04/16/1999 | 1,418.00 |
| | Invoice | 07/21/1999 | 1,950.00 |
| | Invoice | 08/23/1999 | 3,600.00 |
| | Invoice | 08/25/1999 | 5,000.00 |
| | Invoice | 09/22/1999 | 1,950.00 |
| | Invoice | 09/30/1999 | 2,600.00 |
| | Invoice | 11/15/1999 | 754.75 |
| | Invoice | 01/31/2000 | 5,000.00 |
| | Invoice | 02/29/2000 | 2,500.00 |
| | Invoice | 05/30/2000 | 3,750.00 |
| | Invoice | 08/23/2000 | 75,000.00 |
| | Invoice | 09/12/2000 | 5,000.00 |
| | Invoice | 10/10/2000 | 12,000.00 |
| | Invoice | 10/31/2000 | 2,550.00 |
| | Invoice | 11/08/2000 | 32,000.00 |
| | Invoice | 11/10/2000 | 1,000.00 |
| | Invoice | 11/20/2000 | 80,000.00 |
| | Invoice | 01/26/2001 | 10,000.00 |
| | Invoice | 02/09/2001 | 20,000.00 |
| | Invoice | 02/27/2001 | 5,000.00 |
| | Invoice | 02/27/2001 | 40,000.00 |
| | Invoice | 05/21/2001 | 6,100.00 |
| | Invoice | 06/22/2001 | 3,200.00 |
| | Invoice | 07/17/2001 | 3,000.00 |
| | Invoice | 08/23/2001 | 38,000.00 |
| | Invoice | 08/31/2001 | 3,600.00 |
| | Invoice | 10/11/2001 | 2,000.00 |
| | Invoice | 11/29/2001 | 2,800.00 |
| | Invoice | 01/03/2002 | 5,000.00 |
| | Invoice | 01/30/2002 | 20,000.00 |
| | Invoice | 02/01/2002 | 9,000.00 |
| | Invoice | 02/12/2002 | 30,000.00 |
| | Invoice | 02/26/2002 | 38,000.00 |
| | Invoice | 03/14/2002 | 22,000.00 |
| | Invoice | 03/27/2002 | 4,800.00 |
| | Invoice | 05/21/2002 | 8,500.00 |
| | Invoice | 05/20/2002 | 7,040.00 |
| | Invoice | 05/29/2002 | 7,200.00 |
| | Invoice | 05/30/2002 | 6,250.00 |
| | Invoice | 05/30/2002 | 6,250.00 |
| | Invoice | 06/13/2002 | 4,570.00 |
| | Invoice | 06/13/2002 | 4,570.00 |
| | Invoice | 06/21/2002 | 3,000.00 |
| | Invoice | 06/26/2002 | 3,000.00 |
| | Invoice | 07/09/2002 | 1,000.00 |
| | Invoice | 07/19/2002 | 3,000.00 |

11:21 AM
08/29/05

# American Graphics Institute
## Customer QuickReport
### January 1, 1996 through August 29, 2005

| Type | Date | Amount |
|------|------|--------|
| Invoice | 08/23/2002 | 2,000.00 |
| Invoice | 09/12/2002 | 38,000.00 |
| Invoice | 10/10/2002 | 10,500.00 |
| Invoice | 11/22/2002 | 6,000.00 |
| Invoice | 12/10/2002 | 6,400.00 |
| Invoice | 12/19/2002 | 3,000.00 |
| Invoice | 02/14/2003 | 4,000.00 |
| Invoice | 02/06/2003 | 8,320.00 |
| Invoice | 02/18/2003 | 40,000.00 |
| Invoice | 03/11/2003 | 20,000.00 |
| Invoice | 04/30/2003 | 12,150.00 |
| Invoice | 05/05/2003 | 18,000.00 |
| Invoice | 05/05/2003 | 25,000.00 |
| Invoice | 04/30/2003 | 12,150.00 |
| Invoice | 05/20/2003 | 2,000.00 |
| Invoice | 05/21/2003 | 7,740.00 |
| Invoice | 06/20/2003 | 10,000.00 |
| Invoice | 07/28/2003 | 12,000.00 |
| Invoice | 07/31/2003 | 5,640.00 |
| Invoice | 08/22/2003 | 1,500.00 |
| Invoice | 09/10/2003 | 40,000.00 |
| Invoice | 10/03/2003 | 2,000.00 |
| Invoice | 10/17/2003 | 1,500.00 |
| Invoice | 10/29/2003 | 3,000.00 |
| Invoice | 11/24/2003 | 6,550.00 |
| Invoice | 01/07/2004 | 4,300.00 |
| Invoice | 01/12/2004 | 3,400.00 |
| Invoice | 01/12/2004 | 6,100.00 |
| Invoice | 01/26/2004 | 13,000.00 |
| Invoice | 03/24/2004 | 1,400.00 |
| Invoice | 04/05/2004 | 2,400.00 |
| Invoice | 04/13/2004 | 2,700.00 |
| Invoice | 05/11/2004 | 7,040.00 |
| Invoice | 05/12/2004 | 4,000.00 |
| Invoice | 05/27/2004 | 8,000.00 |
| Invoice | 05/27/2004 | 8,000.00 |
| Invoice | 08/24/2004 | 6,000.00 |
| Invoice | 09/24/2004 | 20,000.00 |
| Invoice | 10/07/2004 | 3,889.00 |
| Invoice | 03/14/2005 | 15,000.00 |
| Invoice | 03/14/2005 | 1,800.00 |
| | | |
| Invoice | 10/22/1999 | 22,000.00 |
| Invoice | 11/09/1999 | 6,000.00 |
| Invoice | 12/07/1999 | 4,000.00 |
| Invoice | 02/29/2000 | 2,400.00 |
| Invoice | 07/18/2000 | 10,000.00 |
| Invoice | 04/21/2003 | 1,700.00 |
| Invoice | 05/28/2003 | 1,500.00 |
| Invoice | 05/28/2003 | 1,500.00 |
| Invoice | 05/28/2003 | 1,500.00 |

11:21 AM
08/29/05

# American Graphics Institute
## Customer QuickReport
### January 1, 1996 through August 29, 2005

| Type | Date | Amount |
|------|------|--------|
| Invoice | 07/24/2003 | 25,000.00 |
| Invoice | 07/24/2003 | 15,000.00 |
| Invoice | 07/24/2003 | 2,000.00 |
| Invoice | 09/10/2003 | 40,000.00 |
| Invoice | 04/08/2004 | 10,000.00 |
| Invoice | 06/30/2004 | 10,000.00 |
| Invoice | 10/21/2004 | 26,000.00 |
| Invoice | 08/05/2004 | 4,000.00 |
| Invoice | 05/19/2005 | 2,000.00 |
| Invoice | 05/19/2005 | 2,000.00 |
| Invoice | 05/24/2005 | 2,000.00 |
| Invoice | 06/03/2005 | 2,000.00 |
| Invoice | 06/29/2005 | 2,000.00 |

**Adobe Systems**

| Type | Date | Amount |
|------|------|--------|
| Invoice | 10/18/2004 | 3,600.00 |
| Invoice | 10/29/2004 | 10,000.00 |
| Invoice | 01/19/2005 | 5,500.00 |
| Invoice | 03/24/2005 | 7,700.00 |
| Invoice | 03/31/2005 | 743.20 |
| Invoice | 04/14/2005 | 165.00 |
| Invoice | 04/26/2005 | 2,099.29 |

Total                                1,207,747.24

10:50 AM
08/29/05

**American Graphics Institute**

**Customer QuickReport**

January 1, 1996 through August 29, 2005

| | Type | Date | Amount |
|---|---|---|---|
| **Educational Testing Service** | | | |
| | Invoice | 04/09/1998 | 450.00 |
| | Invoice | 04/21/1998 | 4,200.00 |
| | Invoice | 05/26/1998 | 550.00 |
| | Invoice | 01/19/2000 | 1,485.00 |
| | Invoice | 01/26/2000 | 3,300.00 |
| | Invoice | 01/26/2000 | 2,825.00 |
| | Invoice | 01/26/2000 | 1,975.00 |
| | Invoice | 01/26/2000 | 1,185.00 |
| | Invoice | 06/21/2000 | 31,490.00 |
| | Invoice | 07/19/2000 | 495.00 |
| | Invoice | 08/25/2000 | 595.00 |
| | Invoice | 08/31/2000 | 495.00 |
| | Invoice | 10/31/2000 | 900.00 |
| | Invoice | 10/31/2000 | 1,500.00 |
| | Invoice | 10/31/2000 | 6,525.00 |
| | Invoice | 10/31/2000 | 600.00 |
| | Invoice | 10/31/2000 | 2,400.00 |
| | Invoice | 10/31/2000 | 1,450.00 |
| | Invoice | 10/31/2000 | 1,600.00 |
| | Invoice | 03/14/2001 | 600.00 |
| | Invoice | 03/19/2001 | 1,190.00 |
| | Invoice | 03/29/2001 | 2,000.00 |
| | Invoice | 04/05/2001 | 1,425.00 |
| | Invoice | 04/17/2001 | 975.00 |
| | Invoice | 06/11/2001 | 325.00 |
| | Invoice | 06/14/2001 | 1,000.00 |
| | Invoice | 09/06/2001 | 1,785.00 |
| | Invoice | 11/08/2001 | 595.00 |
| | Invoice | 11/13/2001 | 595.00 |
| | Invoice | 03/07/2002 | 597.50 |
| | Invoice | 03/15/2002 | 597.50 |
| | Invoice | 03/15/2002 | 1,095.00 |
| | Invoice | 03/15/2002 | 1,095.00 |
| | Invoice | 06/21/2002 | 990.00 |
| | Invoice | 06/21/2002 | 990.00 |
| | Invoice | 06/21/2002 | 990.00 |
| | Invoice | 06/21/2002 | 1,485.00 |
| | Invoice | 06/21/2002 | 1,485.00 |
| | Invoice | 06/21/2002 | 1,190.00 |
| | Invoice | 06/21/2002 | 990.00 |
| | Invoice | 06/21/2002 | 1,485.00 |
| | Invoice | 06/21/2002 | 1,190.00 |
| | Invoice | 06/21/2002 | 2,190.00 |
| | Invoice | 06/21/2002 | 1,250.00 |
| | Invoice | 06/21/2002 | 1,250.00 |
| | Invoice | 07/09/2002 | 595.00 |
| | Invoice | 07/09/2002 | 595.00 |
| | Invoice | 07/09/2002 | 595.00 |
| | Invoice | 08/26/2002 | 150.00 |
| | Invoice | 09/26/2002 | 495.00 |

# American Graphics Institute
## Customer QuickReport
### January 1, 1996 through August 29, 2005

| Type | Date | Amount |
|------|------|--------|
| Invoice | 12/04/2002 | 300.00 |
| Invoice | 02/03/2003 | 595.00 |
| Invoice | 02/03/2003 | 595.00 |
| Invoice | 02/20/2003 | 150.00 |
| Invoice | 02/20/2003 | 3,000.00 |
| Invoice | 03/14/2003 | 500.00 |
| Invoice | 03/14/2003 | 500.00 |
| Invoice | 03/14/2003 | 500.00 |
| Invoice | 06/17/2003 | 99.00 |
| Invoice | 09/11/2003 | 1,100.00 |
| Invoice | 09/23/2003 | 7,150.00 |
| Invoice | 09/23/2003 | 8,250.00 |
| Invoice | 09/23/2003 | 8,250.00 |
| Invoice | 10/13/2003 | 5,500.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 1,650.00 |
| Invoice | 10/27/2003 | 550.00 |
| Invoice | 12/17/2003 | 1,495.00 |
| Invoice | 01/05/2004 | 1,195.00 |
| Invoice | 01/05/2004 | 1,195.00 |
| Invoice | 01/26/2004 | 18.41 |
| Invoice | 03/04/2004 | 695.00 |
| Invoice | 04/14/2004 | 550.00 |
| Invoice | 11/19/2004 | 695.00 |

**Total**                                   **150,242.41**

**From:** Judeann Stipe [jstipe@agitraining.com]
**Sent:** Monday, June 21, 2004 7:09 PM
**To:** Schenkel, Leslie
**Subject:** Re: INDesign Training

HI,

This sounds great, I have July 20th reserved for you.

Talk with you tomorrow.

Thank you,
Judeann Stipe

--

Senior Account Manager
AGI Training
P# 717.560.9339

---------

>From: "Schenkel, Leslie" <lschenkel@ets.org>
>To: "'Judeann Stipe'" <jstipe@agitraining.com>
>Subject: INDesign Training
>Date: Mon, Jun 21, 2004, 4:03 PM
>

> Hi,
> I was out of the office Friday, so now I'm finally getting back to you.
> Let's talk tomorrow about setting up classes for InDesign in August.
> My list of names is increasing at least by one more class of 8.
>
> So if we did 3 classes each week that should work.
>
> Also, I hope that the one day seminar for July 20th is still an option.
> I think I'll be able to finalize dates with you tomorrow and fill in the
> names later, okay.
>
> Thanks
> Les
>
> Leslie Schenkel
> Manager, Electronic Publishing
> Educational Testing Service
> 609-406-5603

> lschenkel@ets.org
>
>
>
>
> *******************************************************************************
> This e-mail and any files transmitted with it may contain privileged or
> confidential information. It is solely for use by the individual for whom
> it is intended, even if addressed incorrectly. If you received this e-mail
> in error, please notify the sender; do not disclose, copy, distribute, or
> take any action in reliance on the contents of this information; and delete
> it from your system. Any other use of this e-mail is prohibited. Thank you
> for your compliance.
>
>
>

**From:**     Judeann Stipe [jstipe@agitraining.com]
**Sent:**     Monday, June 28, 2004 12:11 PM
**To:**       Schenkel, Leslie
**Subject:** Re: InDesign training

Hi Leslie,

I am working from home today. I will call you this afternoon.
I have some other good news to share with you.

Thanks,
Judeann
--
Senior Account Manager
AGI Training
P# 717.560.9339

>From: "Schenkel, Leslie" <lschenkel@ets.org>
>To: "Judeann Stipe (E-mail)" <jstipe@agitraining.com>
>Subject: InDesign training
>Date: Fri, Jun 25, 2004, 1:59 PM
>
> I'm ready to start booking everything.
> InDesign will be 6-7 classes during August
> OSX Demo/CS Suite overview for July 20th.
>
> I will be available to talk Monday around 1:30 or after 3:30.
>
> Looking forward to this!!!
>
> Les
>
> Leslie Schenkel
> Manager, Electronic Publishing
> Educational Testing Service
> 609-406-5603
> lschenkel@ets.org
>
>
>
>

> ******************************************************************************

> This e-mail and any files transmitted with it may contain privileged or
> confidential information. It is solely for use by the individual for whom
> it is intended, even if addressed incorrectly. If you received this e-mail
> in error, please notify the sender; do not disclose, copy, distribute, or
> take any action in reliance on the contents of this information; and delete
> it from your system. Any other use of this e-mail is prohibited. Thank you
> for your compliance.
>
>
>

| From: | Judeann Stipe [jstipe@agitraining.com] |
|---|---|
| Sent: | Thursday, July 01, 2004 2:03 PM |
| To: | "Undisclosed-Recipient;"@dejazzd.com |
| Subject: | Leaving AGI |

Hello Friends and Colleagues,

As some of you may know, I am leaving AGI and I wanted to send a quick note as I am unable to speak to each and everyone of you personally.

The last 8 years have been a rewarding and enjoyable experience for me, mostly due to the relationships formed and friends I made along the way. I am taking the summer off to spend with my children and am looking forward to this so much.

AGI has hired Sandra Benedict and she will be your new point of contact. She can be reached at 800-851-9237 or email sbenedict@agitraining.com.

I wish all of you the best and hopefully our paths will cross at some point down the road. Goodbye for now!

Judeann Stipe

Senior Account Manager
AGI Training
1861 Charter Lane
Lancaster, PA 17601
P#717-560-9339
Want to learn Adobe CS new features fast?
Check out: http://www.agitraining.com/pages/new.html

**From:**    Judeann Stipe [sales@acquiredlearning.com]

**Sent:**    Sunday, July 11, 2004 10:07 AM

**To:**    Schenkel, Leslie

**Subject:** Training

Hi Leslie,

I wanted to make sure you got my earlier email? I was having problems
setting up my new system. Please respond to this email and let me know you
got it.

Also, I really want to thank you for the support you have provided so far.
It means a lot to me to have you follow me and help get things off to a
great start. I am coming down to meet with you soon and lunch is on me!

Thanks,
Judeann

| From: | Judeann Stipe [sales@acquiredlearning.com] |
|---|---|
| Sent: | Monday, July 12, 2004 1:39 PM |
| To: | Schenkel, Leslie |
| Subject: | Re: Training |

Hi Leslie,

I was reviewing pricing options and wanted to run some prices by you. Would $1200/day for up to 6 attendees on PC's and $1500 per day for up to 6 attendees on Mac's work? We would supply 6 Mac laptops for the training. Software would be installed as well.

Let me know and then we can go from here.

Thanks,
Judeann

On 7/12/04 9:14 AM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:

> Got it!!!
>
> and Your Welcome!!!
>
> Leslie
>
> -----Original Message-----
> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
> Sent: Sunday, July 11, 2004 10:07 AM
> To: Schenkel, Leslie
> Subject: Training
>
>
> Hi Leslie,
>
> I wanted to make sure you got my earlier email? I was having problems
> setting up my new system. Please respond to this email and let me know you
> got it.
>
> Also, I really want to thank you for the support you have provided so far.
> It means a lot to me to have you follow me and help get things off to a
> great start. I am coming down to meet with you soon and lunch is on me!
>
> Thanks,
> Judeann
>
>
>
>
> *****************************************************************************

> This e-mail and any files transmitted with it may contain privileged or
> confidential information. It is solely for use by the individual for whom
> it is intended, even if addressed incorrectly. If you received this e-mail
> in error, please notify the sender; do not disclose, copy, distribute, or
> take any action in reliance on the contents of this information; and delete
> it from your system. Any other use of this e-mail is prohibited. Thank you
> for your compliance.
>
>

| From: | Judeann Stipe [sales@acquiredlearning.com] |
| Sent: | Tuesday, July 13, 2004 9:25 AM |
| To: | Schenkel, Leslie |

**Subject:** Re: Training

Hi,

I am checking with the instructor for availability, but, think we can do the week you have listed below.

I will get back to you shortly with a confirmation.

Thanks,
Judeann

On 7/13/04 8:48 AM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:

> I'm going to need 4 mac sessions and 1 pc session before August 18th. Prefer
> the week of Aug 9-13.
> Let me know the dates that are good and I'll arrange the names and training
> room.
>
> Leslie
>
> -----Original Message-----
> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
> Sent: Monday, July 12, 2004 4:31 PM
> To: Schenkel, Leslie
> Cc: Delate-Miller, Laura
> Subject: Re: Training
>
>
> Hi,
>
> The software should be installed by ETS for the PC's.
>
> So, I guess the next step is getting some dates nailed down. What do you
> want to have happen in August and September?
>
> Thanks,
> Judeann
>
> On 7/12/04 2:06 PM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:
>
>> The pricing is very fair.
>> Would you be supplying software for the PCs or do I need to have that
>> pre-loaded on our training machines?
>>
>> Leslie

>>
>> -----Original Message-----
>> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
>> Sent: Monday, July 12, 2004 1:39 PM
>> To: Schenkel, Leslie
>> Subject: Re: Training
>>
>>
>> Hi Leslie,
>>
>> I was reviewing pricing options and wanted to run some prices by you.
> Would
>> $1200/day for up to 6 attendees on PC's and $1500 per day for up to 6
>> attendees on Mac's work? We would supply 6 Mac laptops for the training.
>> Software would be installed as well.
>>
>> Let me know and then we can go from here.
>>
>> Thanks,
>> Judeann
>>
>> On 7/12/04 9:14 AM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:
>>
>>> Got it!!!
>>>
>>> and Your Welcome!!!
>>>
>>> Leslie
>>>
>>> -----Original Message-----
>>> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
>>> Sent: Sunday, July 11, 2004 10:07 AM
>>> To: Schenkel, Leslie
>>> Subject: Training
>>>
>>>
>>> Hi Leslie,
>>>
>>> I wanted to make sure you got my earlier email? I was having problems
>>> setting up my new system. Please respond to this email and let me know
> you
>>> got it.
>>>
>>> Also, I really want to thank you for the support you have provided so
> far.
>>> It means a lot to me to have you follow me and help get things off to a
>>> great start. I am coming down to meet with you soon and lunch is on me!
>>>
>>> Thanks,
>>> Judeann
>>>
>>>
>>>
>>>

>>>
> **************************************************************************
>>> This e-mail and any files transmitted with it may contain privileged or
>>> confidential information. It is solely for use by the individual for whom
>>> it is intended, even if addressed incorrectly. If you received this
> e-mail
>>> in error, please notify the sender; do not disclose, copy, distribute, or
>>> take any action in reliance on the contents of this information; and
>> delete
>>> it from your system. Any other use of this e-mail is prohibited. Thank
> you
>>> for your compliance.
>>>
>>>
>>
>>
>>
>> **************************************************************************
>> This e-mail and any files transmitted with it may contain privileged or
>> confidential information. It is solely for use by the individual for whom
>> it is intended, even if addressed incorrectly. If you received this e-mail
>> in error, please notify the sender; do not disclose, copy, distribute, or
>> take any action in reliance on the contents of this information; and
> delete
>> it from your system. Any other use of this e-mail is prohibited. Thank you
>> for your compliance.
>>
>>
>
>
>
> **************************************************************************
> This e-mail and any files transmitted with it may contain privileged or
> confidential information. It is solely for use by the individual for whom
> it is intended, even if addressed incorrectly. If you received this e-mail
> in error, please notify the sender; do not disclose, copy, distribute, or
> take any action in reliance on the contents of this information; and delete
> it from your system. Any other use of this e-mail is prohibited. Thank you
> for your compliance.
>
>

**From:** Judeann Stipe [sales@acquiredlearning.com]

**Sent:** Tuesday, July 13, 2004 6:28 PM

**To:** Schenkel, Leslie

**Subject:** Re: Training

Hi,

Brian is available Aug 11,12 & 13 as well as the entire week following. I have him on hold for the dates until you get back to me. He will also be calling you to touch base prior to the July 20th session.

Did Sonia get the papers we sent back? Should we send you an invoice via email? I need to get the 20th listed first and then you and I can get the other dates lined up. Is it possible to get a credit card payment for the first session?

I will be home tomorrow, if you are available I will call you to finalize all of this. Let me know.

Thanks,
Judeann

On 7/13/04 10:58 AM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:

> Updates:
>
> I have reserved a room for Mac training for August 9-13.
> August 10th we can only use it until 2:30.
>
> I have August 16th for PC training.
>
> I hope this works for you cause rooms are getting scarse
>
> -----Original Message-----
> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
> Sent: Tuesday, July 13, 2004 9:25 AM
> To: Schenkel, Leslie
> Subject: Re: Training
>
>
> Hi,
>
> I am checking with the instructor for availability, but, think we can do the
> week you have listed below.
>
> I will get back to you shortly with a confirmation.
>

> Thanks,
> Judeann
>
> On 7/13/04 8:48 AM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:
>
>> I'm going to need 4 mac sessions and 1 pc session before August 18th.
> Prefer
>> the week of Aug 9-13.
>> Let me know the dates that are good and I'll arrange the names and
> training
>> room.
>>
>> Leslie
>>
>> -----Original Message-----
>> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
>> Sent: Monday, July 12, 2004 4:31 PM
>> To: Schenkel, Leslie
>> Cc: Delate-Miller, Laura
>> Subject: Re: Training
>>
>>
>> Hi,
>>
>> The software should be installed by ETS for the PC's.
>>
>> So, I guess the next step is getting some dates nailed down. What do you
>> want to have happen in August and September?
>>
>> Thanks,
>> Judeann
>>
>> On 7/12/04 2:06 PM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:
>>
>>> The pricing is very fair.
>>> Would you be supplying software for the PCs or do I need to have that
>>> pre-loaded on our training machines?
>>>
>>> Leslie
>>>
>>> -----Original Message-----
>>> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
>>> Sent: Monday, July 12, 2004 1:39 PM
>>> To: Schenkel, Leslie
>>> Subject: Re: Training
>>>
>>>
>>> Hi Leslie,
>>>
>>> I was reviewing pricing options and wanted to run some prices by you.
>> Would
>>> $1200/day for up to 6 attendees on PC's and $1500 per day for up to 6
>>> attendees on Mac's work? We would supply 6 Mac laptops for the training.
>>> Software would be installed as well.

>>>
>>> Let me know and then we can go from here.
>>>
>>> Thanks,
>>> Judeann
>>>
>>> On 7/12/04 9:14 AM, "Schenkel, Leslie" <lschenkel@ets.org> wrote:
>>>
>>>> Got it!!!
>>>>
>>>> and Your Welcome!!!
>>>>
>>>> Leslie
>>>>
>>>> -----Original Message-----
>>>> From: Judeann Stipe [mailto:sales@acquiredlearning.com]
>>>> Sent: Sunday, July 11, 2004 10:07 AM
>>>> To: Schenkel, Leslie
>>>> Subject: Training
>>>>
>>>>
>>>> Hi Leslie,
>>>>
>>>> I wanted to make sure you got my earlier email? I was having problems
>>>> setting up my new system. Please respond to this email and let me know
>> you
>>>> got it.
>>>>
>>>> Also, I really want to thank you for the support you have provided so
>> far.
>>>> It means a lot to me to have you follow me and help get things off to a
>>>> great start. I am coming down to meet with you soon and lunch is on me!
>>>>
>>>> Thanks,
>>>> Judeann
>>>>
>>>>
>>>>
>>>>
>>>>
>> ************************************************************************
>>>> This e-mail and any files transmitted with it may contain privileged or
>>>> confidential information. It is solely for use by the individual for
> whom
>>>> it is intended, even if addressed incorrectly. If you received this
>> e-mail
>>>> in error, please notify the sender; do not disclose, copy, distribute,
> or
>>>> take any action in reliance on the contents of this information; and
>>> delete
>>>> it from your system. Any other use of this e-mail is prohibited. Thank
>> you
>>>> for your compliance.
>>>>

Case 1:05-cv-11857-JLT     Document 8-24     Filed 09/14/2005     Page 9 of 9
Page 4 of 4

```
>>>>
>>>
>>>
>>>
>>>
> ********************************************************************
>>> This e-mail and any files transmitted with it may contain privileged or
>>> confidential information. It is solely for use by the individual for whom
>>> it is intended, even if addressed incorrectly. If you received this
> e-mail
>>> in error, please notify the sender; do not disclose, copy, distribute, or
>>> take any action in reliance on the contents of this information; and
>> delete
>>> it from your system. Any other use of this e-mail is prohibited. Thank
> you
>>> for your compliance.
>>>
>>>
>>
>>
>>
>> ********************************************************************
>> This e-mail and any files transmitted with it may contain privileged or
>> confidential information. It is solely for use by the individual for whom
>> it is intended, even if addressed incorrectly. If you received this e-mail
>> in error, please notify the sender; do not disclose, copy, distribute, or
>> take any action in reliance on the contents of this information; and
> delete
>> it from your system. Any other use of this e-mail is prohibited. Thank you
>> for your compliance.
>>
>>
>
>
>
> ********************************************************************
> This e-mail and any files transmitted with it may contain privileged or
> confidential information. It is solely for use by the individual for whom
> it is intended, even if addressed incorrectly. If you received this e-mail
> in error, please notify the sender; do not disclose, copy, distribute, or
> take any action in reliance on the contents of this information; and delete
> it from your system. Any other use of this e-mail is prohibited. Thank you
> for your compliance.
>
>
```

Acquired Learning Incorporated

# Invoice

P.O. Box 10803
Lancaster, PA 17605-0803

| Date | Invoice # |
|------|-----------|
| 7/16/2004 | 2 |

| Bill To |
|---------|
| ETS -Educational Testing Service |
| Rosedale Road |
| Princeton, NJ 08541 |
| Attn: ~~██████████~~ |

PAID

| P.O. No. | Terms | Project |
|----------|-------|---------|
| VERBAL | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | On-Site Training | 1,500.00 | 1,500.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | **Total** | $1,500.00 |

ALI00056

Acquired Learning Incorporated

P.O. Box 10803
Lancaster, PA 17605-0803

# Invoice

| Date | invoice # |
|------|-----------|
| 7/16/2004 | 1 |

PAID

**Bill To**

ETS -Educational Testing Service
Rosedale Road
Princeton, NJ 08541
Attn: ~~Jeff McKibben~~

| | P.O. No. | Terms | Project |
|---|----------|-------|---------|
| | VERBAL | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 4 | On-Site Custom InDesign CS Training - For Mac users<br>August 11, 12, 13 and 17<br>6 Attendees (Equipment provided by Acquired Learning) | 1,500.00 | 6,000.00 |
| 1 | On-Site Custom InDesign CS Training - For PC users<br>August 16<br>6 Attendees (Equipment provided by client) | 1,200.00 | 1,200.00 |

Please remit to above address.

| **Total** | $7,200.00 |
|-----------|-----------|

ALI00055