UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN GRAPHICS  INSTITUTE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACQUIRED LEARNING, INC., JUDEANN STIPE, DEAN NOVOSAT, CLARK EDWARDS, SAGE ADVICE, LTD., and CARL LEINBACH, <br><br> Defendants. | Civil Action No. 05-11857-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF AGI'S
MOTION FOR DEFAULT  JUDGMENT AGAINST DEFENDANTS ACQUIRED
LEARNING, INC. AND SAGE ADVICE, LTD.**

Plaintiff American Graphics Institute, Inc. ("AGI") hereby submits this

Memorandum of Law in support of its Motion For Default Judgment Against Defendants,

Acquired Learning, Inc. and Sage Advice, Ltd.

I.
Introduction

Plaintiff American Graphics Institute, Inc. ("AGI") has suffered loss of profits,

reputation, and business goodwill as a result of the egregious actions of the Defendants.

Defendants have exceeded authorized use of AGI's confidential trade secrets or illegally

accessed AGI's customer and customer scheduling databases using forged and otherwise

wrongfully obtained passwords and gained access to Plaintiff's secured, password

protected servers to steal proprietary confidential information for the benefit of a

competing company, Acquired Learning, Inc. ("Acquired").   Furthermore, Defendants

1

Acquired and Sage Advice, Ltd. ("Sage Advice") have misappropriated AGI's trade secrets.  Finally, Defendants Acquired and Sage Advice are now in default.

Plaintiff AGI brings this Motion for Default Judgment against Defendants Acquired and Sage Advice under Rule 55(b)(2) of the Federal Rules of Civil Procedure, seeking default judgment and award of damages and injunctive relief as appropriate under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and 1030(a)(5) ("CFAA"), claims of trade secret misappropriation pursuant to Massachusetts common law and Mass. G.L. ch. 93, §42, a common law claim of tortious interference with a business advantage, a common law claim of unfair competition, a claim under Mass. G.L. ch. 93A, § 11 for unfair competition, the Lanham Act, 15 U.S.C. § 1125(a)(1), and a common law claim of conversion.  This is a memorandum of law in support of AGI's Motion for Default Judgment.

II.
Factual Background

AGI is actively engaged in the business of providing consulting services and training courses related to computers, software, and electronics.  (Smith[1] Aff. ¶¶2, 5.) During the ten years that it has been in operation, AGI and its predecessor, Cyber Solutions, Inc. ("Cyber"), established a strong and positive reputation among publishers and industry professionals.  (Silverman Dec. ¶8; Shaffstall Dec. ¶2; Smith Aff. ¶15-17.) As a result, AGI has amassed an extensive customer list, which is stored in a confidential customer database system and customer scheduling database system.  These database

---

[1]Affidavit of Christopher Smith in Support of its Motion for Preliminary Injunction, filed September 26, 2005.  References to affidavits filed in connection with Plaintiff American Graphic Institute's Motion For Preliminary Injunction are identified by the last name of the affiant followed by "Aff. ¶ __" or "Aff. Exh. References to declarations filed in connection with Plaintiff American Graphic Institute's Motion For Preliminary Injunction are identified by the last name of the declarant followed by "Dec. ¶ __." __."

systems contain detailed confidential information regarding AGI's customers. The information includes the name, address, phone number, email address and credit card records for each customer. The customer list and customer scheduling database also contain information on the software systems, training plans, software upgrade plans, the software versions being used by each customer, as well as other technical information. ("Smith Aff. ¶¶19-20; Shaffstall Dec. ¶¶3-4.) This information is considered confidential by AGI's customers. In fact, AGI has confidentiality and non-disclosure agreements with many of its clients that preclude the dissemination of the information contained in the customer database and customer scheduling database. (Smith Aff. ¶22, Exh. A; Silverman Dec. ¶5)

The confidential client information stored in AGI's database systems is secured. AGI employees are provided with access to AGI's database systems on a need-to-know basis. Only select AGI employees are provided access to these database records, and even those that are provided with access may only have tiered access privileges, with only management being provided full database access to the database systems. (Smith Aff. ¶24.)

Only sales personnel and some management are authorized to access AGI's database systems. The databases are secured by passwords, and only authorized users are provided with the special software, password, or location of the databases. Even some senior management are not provided with unfettered access to this information. (Smith Aff. ¶25.)

Defendant Judeann Stipe was previously an employee of AGI and its predecessor Cyber. As an employee of AGI, Stipe received an AGI laptop computer that she was to

use while working for AGI.  (Smith Aff. ¶30.)  On January 11, 2004, Stipe was promoted

to the position of Senior Sales Executive.  On June 1, 2004, Stipe became a part-time

employee at her request.   (Smith Aff. ¶27.)  On June 28, 2004, Stipe resigned.  Stipes'

last day with AGI was on July 1, 2004.  (Smith Aff. ¶¶33-34.) On June 28, 2004, Stipe

was asked to return the laptop computer she had been issued as an employee.  (Smith Aff.

¶55.)  This laptop was returned on shortly after Stipes' resignation, the operating system

having been reinstalled on July 2, 2004.  (Smith Aff. ¶68.)

After resigning from AGI, Stipe immediately began working for Defendant

Acquired, a direct competitor of AGI.  (Smith Aff. ¶38.)  Emails sent from Judeann

Stipe's Acquired work e-mail address, "Judeann Stipe [sales@acquiredlearning.com]", to

client ETS (also a client if AGI) on July 11, 2004, July 12, 2004, and July 13, 2004, all

reference her sales related work to ETS.  (Smith[2] Supp. Aff. ¶¶2-3, Exh. 1).  In these

emails, she describes sales related activities, scheduling dates and confirming billing

details with this client.  It was on and around these dates that she repeatedly and

wrongfully accessed AGI's password protected database servers.  (Smith Supp. Aff. ¶4;

Smith Aff. ¶¶70-79) (Leinbach Aff. ¶22.)

Defendant Clark Edwards is also a former employee of AGI.  Clark Edwards is

formerly the treasurer of AGI.  Clark Edwards left AGI in March 2002, and joined

Defendant Acquired in July 2004, when he and Defendant Novosat formed the Defendant

corporation.  (Edwards Aff. ¶2) (Smith Aff. ¶39.)

Defendant Dean Novosat is a former consultant to AGI, and does business as

---

[2] Supplemental Affidavit of Christopher Smith in Support of its Motion for Preliminary Injunction, filed
November 22, 2005. References to the Supplemental Affidavit of Christopher Smith in Support of its
Motion for Preliminary Injunction, filed November 22, 2005 are identified by "Smith Supp. Aff. ¶__" or
"Smith Supp. Aff. Exh. __"

Defendant Sage Advice, Ltd.  On July 19, 2004, Edwards and Novosat formed the Defendant corporation, Acquired.  (Smith Aff. ¶39.)  Similar to AGI, Defendant Acquired is actively engaged in the business of providing consulting services and training courses related to computers and software. (Smith Aff. ¶36.)

Neither Defendant Acquired nor Defendant Sage Advice is an infant or incompetent person or in the military.  (Fessenden[3] Aff. ¶11.)

In July 2004, when the AGI database was illegally accessed by Defendants, Defendant Acquired was the employer of individual Defendants Judeann Stipe, Clark Edwards, and Dean Novosat. (Smith Aff. ¶35; Smith Aff. ¶39.)

On September 1, 2005, AGI engaged Elysium Digital, LLC a forensic company, to analyze AGI's computer systems to determine if AGI's computer systems had been compromised.   (Smith Aff. ¶54.)  During the course of this investigation, Elysium Digital analyzed Stipe's AGI laptop and discovered that Stipe had logged onto AGI's database system and exported customer database files to the laptop after she was no longer an employee of AGI.  (Smith Aff. ¶57.)  Following Stipe's resignation, in accordance with AGI's procedures, on July 1, 2004, Stipe's passwords were revoked. (Smith Aff. ¶34.)  However, several times on July 2, 2004, Stipe accessed AGI's secured, password protected computers in Woburn, Massachusetts without authorization, using forged passwords, and took information from the database system.  (Smith Aff. ¶¶58-67, Exh. D-L.)   Specifically, on July 2, 2004, Stipe exported AGI's customer information for New York, Delaware, New Jersey, Maryland, and Washington D.C., downloading

---

[3] Affidavit of Giovanna H. Fessenden for American Graphic Institute's Motion For Default Judgment, filed December 8, 2005.  References to Affidavit of Giovanna H. Fessenden in Support of Plaintiff American Graphic Institute's Motion For Default Judgment, filed December 8, 2005 are identified by "Fessenden Aff. ¶ __" or "Aff. Exh. __."

more than 22,500 customer records, including 14,000 e-mail records from AGI's secured

servers and copied them to her laptop computer in Lancaster, PA. (Smith Aff. ¶¶55-69,

Exhs. D-M.)

Stipe, acting as an agent on behalf of Defendant Acquired and for Acquired's

benefit, continued to access AGI's confidential customer list and customer scheduling

databases on other occasions, without AGI's consent. (Smith Aff. ¶¶58-67, 72-79; Eaddy

Aff. ¶13-23.) Stipe accessed AGI's server on at least two other occasions in July and

opened AGI's customer database system, accessing more than 63,000 confidential AGI

customer records and other AGI confidential information. (Smith Aff. ¶71.) In

particular, on July 12, 2004, and July 14, 2004, Stipe used forged passwords to break into

the AGI customer database. Judeann Stipe admitted that she accessed AGI's databases

on July 12, 2004 and July 14, 2004. (Stipe Aff. ¶11.) The customer database is a

password protected database stored on AGI's file server in Woburn, Massachusetts, and it

was accessed from Internet protocol ("IP") address 68.82.227.55, using software and

computer equipment provided by Sage Advice, Ltd., which is a consulting company

operated by Dean Novosat. (Smith Aff. ¶¶72-74, Exhs. N, O; Eaddy Aff. ¶¶13-16.)

None of these individuals were authorized to access the password protected database.

(Smith Aff. ¶73.)

As a result of Defendants' unlawful activities on AGI's server, AGI has incurred

remedial and investigative expenses exceeding $5,000 that are directly attributable to

Defendants' unauthorized access to AGI's trade secrets and confidential information.

(Smith Aff. ¶80.) Specifically, when AGI suspected the security breach, it engaged its

information technology ("IT") service provider to reset permissions, passwords, and

security privileges, spending an estimated $5,000.  (Smith Aff. ¶80.)  AGI also hired

Elysium Digital, LLC to determine whether AGI's computer systems have been

compromised.  (Smith Aff. ¶80.) To date, the cost incurred by AGI for Elysium has been

$550 for testing and site visit preparations, $1,555 for onsite review and analysis of data

gathered, totaling $2,105. (Smith Aff. ¶80.)  Also, in order to remedy the breach, AGI is

in the process of purchasing new routers and firewalls, which require setup and

configuration from its IT provider, totaling an estimated $25,000. (Smith Aff. ¶80.)

Thus, the remedial and investigative expenses incurred totaled to date are $7,105, and

once the new firewalls and routers are in place, AGI's total remedial and investigative

expenses will be at least $32,105. (Smith Aff. ¶80.)

Defendants Acquired, Sage Advice and the other named defendants acted

purposely to acquire information to which they knew they were not entitled, for the

purpose of securing unfair and unlawful profits for themselves.  Through their

unauthorized access to AGI's computer databases, Defendants obtained AGI's valuable

confidential business information and other confidential proprietary information, and

used the information to solicit AGI's customers.  (Smith Aff. ¶79.)

In 2004 and 2005, Defendant Acquired and its agents used wrongfully converted

AGI customer records to send bulk-email (SPAM) to AGI customers.  This list has been

used repeatedly to send thousands of unsolicited SPAM messages to AGI customers.

(Smith Aff. ¶81.)

In addition to the remedial and investigative expenses incurred, AGI has also lost

significant amounts of business from two substantial clients, Education Testing Services,

Inc. ("ETS") and Adobe Systems, Inc. ("Adobe") as a direct result of Defendants'

unlawful actions.  (Smith Aff. ¶82-94.)  Financial records indicate that the relationship with these two clients exceeds $1.25 million. (Smith Aff. ¶82.)

Sometime in June 2004, while Stipe was still employed by AGI, Stipe received sales orders and inquiries from ETS.  ETS has been an AGI client since 1998.  Stipe never reported these June 2004 sales orders to AGI's management and accounting department.  Instead, these sales were wrongfully diverted and converted by Defendant Acquired.  (Smith Aff. ¶¶84-94; Exhs. U-Y.)

### III.
### Procedural History

On September 14, 2005, Plaintiff AGI filed a Complaint against the Defendants in this Court.  With respect to Defendants Acquired and Sage Advice, the Complaint alleges, in six counts, violation of 18 U.S.C. §1030(a)(4) and §1030(a)(5), trade secret misappropriation, tortious interference with business advantage, unfair competition, violation of 15 U.S.C. §1125(a)(1), and conversion.  On the same day that Plaintiff filed its Complaint, the Court issued to each of the Defendants, including Acquired and Sage Advice, a Summons In A Civil Action which, in part, notified each Defendant that it must, within twenty days after service of the Summons, serve upon the attorney for the Plaintiff, an Answer to the Complaint and file the Answer with the Clerk of Court.  On September 16, 2005, Stacy Novosat accepted service on behalf of Defendant Sage Advice. (Fessenden Aff. ¶3, Exh. A.) On September 19, 2005, attorney Jason Morgan accepted service on behalf of Defendant Acquired.  (Fessenden Aff. ¶3, Exh. B.)  Jason Morgan is the attorney of record for Defendants Acquired in the co-pending lawsuit, Civil Action No. 04-12611 JLT, and Mr. Morgan advised Plaintiff's counsel that he was authorized to accept service in this case on behalf of Acquired. (Fessenden Aff. ¶5.)

By the expiration of the twenty-day period specified on the Summons, Defendants Sage Advice, and Acquired, had not filed an Answer to the Complaint with the Clerk of this Court, nor had it served a copy of the Answer upon the Plaintiff. [4]  To date, Defendants Sage Advice and Acquired have not responded to the Complaint, nor otherwise appeared in this action.

Pursuant to Fed. R. Civ. P. 12, the Defendants had twenty days to file an answer or motion in response to the Complaint.  On November 2, 2005, Plaintiff, after either conferring or attempting to confer in good faith with the Defendants for the purpose of determining whether they would consent to entry of default against Defendants Acquired and Sage Advice, filed a Request For Notice Of Default.  The Court granted Plaintiff's request on November 8, 2005.  Accordingly, the Court gave notice to the Defendants that Defendants Acquired and Sage Advice had been defaulted on November 8, 2005.

On December 8, 2005, Plaintiff's counsel notified Defendants Dean Novosat, Judeann Stipe and Carl Leinbach by telephone that it intended to petition the court for a judgment by default against Acquired and Sage Advice.

IV.
### Defendants Acquired and Sage Advice Have Failed to Answer the Complaint or Otherwise Defend This Action and Plaintiff is Entitled to Final Judgment By Default and Injunction

Rule55(b)(2) provides that "the party entitled to a judgment by default shall apply to the court" to seek such a judgment.  Fed. R. Civ. P. 55(b)(2).  In calculating damages, it is within this Court's discretion to issue a final judgment without a hearing or to hear

---

[4] On October 19, 2005, more than 20 days after the Complaint was filed, the individual named defendants Clark Edwards, Dean Novosat, and Judeann Stipe filed an answer to the complaint *pro se*.  A corporate defendant may not be represented *pro se* in federal court.  Archery USA, Inc. v. United States, No. 02-CV-10643-JLT, 2003 U.S. Dist. LEXIS 11197. at *4 (D. Mass. Mar. 27, 2003).  Consequently, corporate defendants Acquired and Sage Advice. have failed to respond to the Complaint filed on September 14, 2005.

evidence relating to damages.  Ortiz-Gonzales v. Fonovisa, 277 F.3d 59, 64 (1st Cir. 2002).

"There is no question that, default having been entered, each of plaintiff's allegations of fact must be taken as true and each of its claims must be considered established as a matter of law."  In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002) (Citations omitted; internal punctuation omitted).

Here, the Clerk entered a Notice of Default against Defendants Acquired and Sage Advice on November 8, 2005.  The Complaint filed, on September 14, 2005, establishes a cause of action for each of the six counts recited and thus establishes the liability of the Defendants Acquired and Sage Advice.

A. <u>The Facts Alleged, Substantiated by Evidence of Record, Establish Defendants' Liability for Plaintiff's Claims</u>

<u>Count I.  Computer Fraud and Abuse – 18 U.S.C. § 1030(a)(4)</u>

When the Defendants knowingly broke into the computer databases owned by AGI, they violated the Computer Fraud and Abuse Act.  Pursuant to 18 U.S.C. § 1030 (a)(4), anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…shall be punished . . . ."  18 U.S.C. § 1030 (a)(4).

As detailed above,  the evidence in this case overwhelmingly indicates that defendants have violated the CFAA.  On multiple occasions after Stipe resigned from AGI and began working for a competing company, Defendant Acquired, Stipe accessed AGI secured computer databases using forged or wrongfully acquired passwords.  (Smith Aff. ¶¶58-68; 71-77.)  On at least three occasions in July,  Defendants Acquired and Sage

Advice and/or their agents, knowingly accessed AGI's customer database system without authorization. (Smith Aff. ¶78.)   Defendants gained access to more than 63,000 confidential AGI customer records and other AGI confidential information.  (Smith Aff. ¶71.)

These actions were taken with the intent to defraud AGI.  Through their unauthorized access to AGI's computer databases, Defendants obtained and used the ill-gotten information to solicit new customers. (Smith Aff. ¶¶78-79.)

Count II: Computer Fraud and Abuse – 18 U.S.C. § 1030(a)(5)

Under § 1030 (a)(5), anyone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes . . .  loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value  . . .  shall be punished . . . ."  See 18 U.S.C. §1030 (a)(5)(A)-(B).

AGI has incurred remedial and investigative expenses exceeding $5000 that are directly attributable to Defendants' unauthorized access to AGI's trade secrets and confidential information.  (Smith Aff. ¶80.)  Moreover, AGI's continues to suffer even more significant economic losses.  A plaintiff may collect damages for its lost business, business goodwill, and for the cost of restoring parts of its business that were affected by competitor's violations because all of those things constitute economic damages that are recoverable under the Act.  See Creative Computing v Getloaded.com, LLC, 386 F.3d 930, 935 (9th Cir. 2004); but see Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004).  Here, AGI's reputation and goodwill have been harmed by the

11

Defendants' actions and AGI continues to lose business as a result.  For example, the Defendants cumulative acts have assisted them in interfering with the relationship between AGI and ETS, and AGI and Adobe.  The relationships with these two clients alone have earned AGI more than $1.25 million.  (Smith Aff. ¶82.)

Count III: Common Law Misappropriation of AGI's Trade Secrets

Massachusetts common law provides for a remedy in tort for trade secret misappropriation.  "A list of customers may properly constitute a trade secret, 'if the person entitled to a trade secret wishes to have its exclusive use in his own business, he must not fail to take all proper and reasonable steps to keep it a secret.'" Export Lobster Co., Inc. v. Bay State Lobster Co., Inc., No. 92-6348-E, 1994 Mass. Super. LEXIS 90, at *19 (Mass. Super. Ct. Oct. 31, 1994) citing  J.T. Healy & Son Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736, 738 (1970).

In this case, AGI has offered evidence that the information contained on the customer list and customer scheduling databases is of a type not known outside of the business and could not easily or properly be acquired or duplicated by others.  (Silverman Dec. ¶¶4-10; Shaffstall Dec. ¶¶3-5; Smith Aff. ¶¶15-26.)    This confidential information is subject to trade secret protection.  (Silverman Dec. ¶¶4-10; Shaffstall Dec. ¶¶3-5; Smith Aff. ¶¶15-26.)

Additionally, AGI has employed reasonable security measures to safeguard the secrecy of its trade secrets and proprietary information. (Smith Aff. ¶¶19; 23-26.)

Finally, Massachusetts case law "undoubtedly prescribes former employees from misappropriating the trade secrets learned during their former employment."  Harvard Apparatus, Inc., v. Cohen, 130 F. Supp. 2d 161, 174 (D. Mass. 2001).  As detailed above,

Defendants did not have permission to use or disclose AGI's trade secrets or confidential information.

<u>Count IV: Trade Secret Misappropriation – Mass. G.L. ch. 93, §42</u>

A person who "unlawfully takes, carries away, conceals, or copies, or by fraud or by deception obtains, from any person or corporation, with intent to convert to his own use, any trade secret" is liable under Mass. G.L. ch 93, §42 for misappropriation of trade secrets.

As detailed above, AGI has presented sufficient evidence that Defendants Acquired and Sage Advice, or their agents, misappropriated AGI's trade secrets when they, without authorization, accessed and used information from AGI's secured customer and customer scheduling databases.

<u>Count V: Tortious Interference With Business Advantage</u>

To succeed on a claim of tortious interference with a business advantage claim, AGI must show that (1) there was a business relationship or contemplated contract of economic benefit; (2) the defendants had knowledge of such a relationship; (3) the defendants interfered with the relationship through improper motive or means; and (4) plaintiff's loss of advantage directly resulted from defendants' conduct.  <u>See</u> <u>American Private Line Services, Inc. v. Eastern Microwave, Inc.</u>, 980 F.2d 33, 36 (1st Cir. 1992) citing, <u>United Truck Leasing Corp. v. Geltman</u>, 406 Mass. 811, 551 N.E.2d 20, 12 (1990).

The evidence demonstrates that the Defendants knowingly interfered with at least two specific customers, ETS and Adobe. (Smith Aff. ¶¶82-94.)  Furthermore, Defendants accessed the customer list database and contacted customers with whom AGI has an

ongoing business relationship.  (Smith Aff. ¶81.)  AGI often has repeat customers and thus has a reasonable expectation that these customers would again retain its services.

By contacting known customers of AGI using information unlawfully obtained, Defendants employed improper means for interfering with AGI's business relationships. By intentionally accessing AGI's databases and confidential business information with the intent to take customers away from AGI, Defendants acted with improper motive.

Finally, AGI's loss of advantage is the direct result of the Defendants' actions. Had Defendants not interfered with the relationship between AGI and ETS, or AGI and Adobe, AGI would have maintained a business relationship both ETS and Adobe.  The relationships with these two clients alone has earned AGI more than $1.25 million.

### Count VII: Common Law Unfair Competition by Acquired

Defendant Acquired has used AGI's course titles and course descriptions on defendant Acquired's website and on defendant Acquired's advertising materials.  (Smith Aff. ¶40).  Additionally, Defendant Acquired has misappropriated and used AGI's confidential customer information and other proprietary content.  These two facts, in conjunction with the fact that Defendant Acquired operates from the same location previously occupied by Plaintiff AGI has created a likelihood of consumer confusion. This confusion has cost AGI profits and has damaged and will continue to damage AGI's reputation and business goodwill.

### Count VIII: Unfair Competition -- Mass. G.L. ch. 93A, §11

To establish a cause of action under Mass. G.L. ch. 93A, §11, a plaintiff must prove that both parties are involved in trade or business, that the defendants willfully engaged in unfair conduct, and that the events alleged occurred primarily and substantially in

Massachusetts. <u>See</u>, <u>Quaker State Oil Ref. Corp v. Garrity Oil</u>, 884 F2d 1510 (1st Cir. 1989).

As detailed above, AGI has proffered evidence that Defendants Acquired engaged in unfair conduct.  By purposely breaking into AGI's secured customer and customer scheduling databases and downloading customer records, contacting AGI's customers and interfering with AGI's business relationships, Defendants have acted willfully. Finally, the servers and customer information wrongfully taken from AGI are located in Massachusetts, thus the willful, unfair acts of the Defendant occurred primarily and substantially in the Commonwealth.

<u>Count IX: Federal Unfair Competition (15 U.S.C. § 1125(a)(1)) By Acquired</u>

Defendant Acquired has used AGI's course titles and course descriptions on defendant Acquired's website and on defendant Acquired's advertising materials.  (Smith Aff. ¶40).  Additionally, Defendant Acquired has misappropriated and used AGI's confidential customer information and other proprietary content.  These two facts, in conjunction with the fact that Defendant Acquired operates from the same location previously occupied by Plaintiff AGI, has created a likelihood of consumer confusion. This confusion has cost AGI profits and has damaged and will continue to damage AGI's reputation and business goodwill.

<u>Count X: Common Law Conversion by Acquired</u>

Under Massachusetts common law, a defendant is liable for conversion when it has "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which [it] has no right of possession at the time . . . ."  <u>Abington Natl. Bank v. Ashwood Homes, Inc.</u>, 19 Mass.App.Ct. 503, 507 (1985).  Defendant

Acquired intentionally and wrongfully exercised control over AGI's trade secrets when it used the wrongfully obtained customer lists to contact AGI's customers.

B.  Damages

(i) Monetary Damages

In this case the damage suffered by AGI are not susceptible to mathematical computation. See KPS & Associates, Inc. v. Designs by FMC, Inc., 318 F.3d 1, 44 (1st Cir. 2003).  Given this fact and the complexity of the damages suffered by AGI, plaintiff respectfully requests a hearing on damages.  See, Fed. R. Civ. P. 55(b)(2).  Additionally, plaintiff requests ninety (90) days of discovery on the issue of damages.

Thus, Plaintiff AGI respectfully requests a hearing on damages for the purpose of:

a.  determining and awarding AGI its damages and injunctive relief as set forth in 18 U.S.C. 1030(g) for defendants' deliberate and willful violation of 18 U.S.C. § 1030(a)(4) as alleged in Count I of the complaint;

b.  determining and awarding AGI its damages and injunctive relief as set forth in 18 U.S.C. 1030(g) for defendants' deliberate and willful violation of 18 U.S.C. § 1030(a)(5) as alleged in Count II of the complaint;

c.  determining and awarding AGI its damages and injunctive relief for defendants' deliberate and willful misappropriation of trade secrets as alleged in Count III of the complaint;

d.  determining and awarding AGI its damages and statutory double damages for defendant's deliberate and willful misappropriation of trade secrets in violation of Mass. G.L. ch. 93, §42 as alleged in Count IV of the complaint;

e.  determining and awarding AGI its damages for defendants' deliberate and willful tortious interference with AGI' business advantage as alleged in Count V of the complaint;

f.  determining and awarding AGI its damages for defendants' deliberate and willful unfair competition and conscious disregard of the rights of AGI as alleged in Count VII of the complaint;

g.  determining and awarding AGI its damages and awarding statutory treble damages for defendants' deliberate and willful violation of Mass. G.L. ch. 93A, §11 as alleged in Count VIII of the complaint;

h.  determining and awarding AGI its damages as set forth in 15 U.S.C. § 1117(a) for defendants' deliberate and willful violation of 15 U.S.C. §1125(a)(1) as alleged in Count IX of the complaint;

i.  determining and awarding AGI its damages for defendants' deliberate and willful conversion of AGI's property as alleged in Count X of the complaint; and

j.  awarding AGI its cost of suit and attorneys' fees.

(ii) <u>Injunctive Relief</u>

Monetary relief alone will not be adequate to compensate AGI for the harms it has suffered because of the egregious actions of the Defendants.  If the Defendants are not enjoined from further trade secret misappropriation, computer fraud and abuse, tortious interference with a business advantage, unfair competition, and conversion, the harm to AGI's business, reputation, and goodwill can only increase.  Furthermore, without an injunction prohibiting the Defendants from further use of AGI's trade secrets and

confidential information, the Defendants will continue to benefit from their wrongful

acts.  Consequently, AGI respectfully requests that this Court issue an Order enjoining

defendants Acquired Learning. and Sage Advice and their respective agents, employees,

officers and directors, attorneys, successors, licensees, and assigns, and all those persons

acting in concert and combination with them:

a.  From accessing or attempting to access AGI's computer systems, and
    from using directly or indirectly any information they obtained, learned or
    derived from accessing AGI's computer systems in the past;

b.  From making any use, either directly or indirectly, of AGI's Customer
    Information, including without limitations initiating any contact with any
    persons, businesses, entities, agents, or anyone else associated with AGI's
    customers;

c.  From engaging in any conduct or actions to compete with AGI for a
    period of thirty-six (36) months from the date of entry this Order;

d.  From making any use, either directly or indirectly, of AGI's Customer
    Information, including without limitations initiating contact with any
    persons, businesses, entities, agents, or anyone else associated with AGI;

e.  For a period of thirty-six (36) months from the date of entry of this Order,
    from engaging in the electronic publishing software training business; and

f.  To deliver to counsel of record for AGI forthwith all copies of AGI's
    Customer Information in his or her or its possession, custody or control,
    including without limitation any and all information contained in

computer files, diskettes, backups, course materials, and marketing

materials.

## CONCLUSION

AGI respectfully requests that this Court enter an order of default against

defendants, Acquired Learning and Sage Advice.


AMERICAN GRAPHICS  INSTITUTE, INC.

By their attorneys,



Dated: December 8, 2005

/s/ Giovanna H. Fessenden
John L. DuPré   (BBO No. 549659)
David J. Brody   (BBO No. 058200)
Giovanna H. Fessenden (BBO No. 654681)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:   (978) 341-0136



## CERTIFICATE OF SERVICE

I, Giovanna Fessenden, hereby certify that on December 8, 2005, service of the foregoing was made on all Defendants by mail.


/s/ Giovanna H. Fessenden
Giovanna H. Fessenden


591642_1.DOC