UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN GRAPHICS INSTITUTE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACQUIRED LEARNING, INC., JUDEANN STIPE, DEAN NOVOSAT, CLARK EDWARDS, SAGE ADVICE, LTD., and CARL LEINBACH, <br><br> Defendants. | Civil Action No. 05-11857-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF AMERICAN GRAPHICS INSTITUTE INC.'S
MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS JUDEANN STIPE AND DEAN NOVOSAT**

Plaintiff American Graphics Institute, Inc. ("AGI") hereby submits this Memorandum of Law in support of its Motion For Default Judgment Against Defendants, Judeann Stipe and Dean Novosat.

I.
Introduction

Plaintiff American Graphics Institute, Inc. ("AGI") has suffered loss of profits, reputation, and business goodwill as a result of the egregious actions of the Defendants. Defendants Judeann Stipe and Dean Novosat have exceeded authorized use of AGI's confidential trade secrets or illegally accessed AGI's customer and customer scheduling databases using forged and otherwise wrongfully obtained passwords and gained access to Plaintiff's secured, password protected servers to steal proprietary confidential information for the benefit of a competing company, Acquired Learning, Inc.

1

("Acquired").  Furthermore, Defendants Judeann Stipe and Dean Novosat have misappropriated AGI's trade secrets.  Finally, Defendants Judeann Stipe and Dean Novosat are now in default.

Plaintiff AGI brings this Motion for Default Judgment against Defendants Judeann Stipe and Dean Novosat under Rule 55(b)(2) of the Federal Rules of Civil Procedure, seeking default judgment and award of damages and injunctive relief as appropriate under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and 1030(a)(5) ("CFAA"), claims of trade secret misappropriation pursuant to Massachusetts common law and Mass. G.L. ch. 93, §42, a common law claim of tortious interference with a business advantage, a common law claim of breach of duty of loyalty, a common law claim of unfair competition, a claim under Mass. G.L. ch. 93A, § 11 for unfair competition,  and a common law claim of conversion.  This is a memorandum of law in support of AGI's Motion for Default Judgment Against Judeann Stipe and Dean Novosat.

II.
Factual Background

AGI is actively engaged in the business of providing consulting services and training courses related to computers, software, and electronics.  (Smith[1] Aff. ¶¶2, 5.) During the ten years that it has been in operation, AGI and its predecessor, Cyber Solutions, Inc. ("Cyber"), established a strong and positive reputation among publishers and industry professionals.  (Silverman Dec. ¶8; Shaffstall Dec. ¶2; Smith Aff. ¶15-17.) As a result, AGI has amassed an extensive customer list, which is stored in a confidential

---

[1]Affidavit of Christopher Smith in Support of its Motion for Preliminary Injunction, filed September 26, 2005.  References to affidavits filed in connection with Plaintiff American Graphic Institute's Motion For Preliminary Injunction are identified by the last name of the affiant followed by "Aff. ¶ __" or "Aff. Exh. __." References to declarations filed in connection with Plaintiff American Graphic Institute's Motion For Preliminary Injunction are identified by the last name of the declarant followed by "Dec. ¶ __." __."

2

customer database system and customer scheduling database system. These database systems contain detailed confidential information regarding AGI's customers. The information includes the name, address, phone number, email address and credit card records for each customer. The customer list and customer scheduling database also contain information on the software systems, training plans, software upgrade plans, the software versions being used by each customer, as well as other technical information. ("Smith Aff. ¶¶19-20; Shaffstall Dec. ¶¶3-4.) This information is considered confidential by AGI's customers. In fact, AGI has confidentiality and non-disclosure agreements with many of its clients that preclude the dissemination of the information contained in the customer database and customer scheduling database. (Smith Aff. ¶22, Exh. A; Silverman Dec. ¶5)

The confidential client information stored in AGI's database systems is secured. AGI employees are provided with access to AGI's database systems on a need-to-know basis. Only select AGI employees are provided access to these database records, and even those that are provided with access may only have tiered access privileges, with only management being provided full database access to the database systems. (Smith Aff. ¶24.)

Only sales personnel and some management are authorized to access AGI's database systems. The databases are secured by passwords, and only authorized users are provided with the special software, password, or location of the databases. Even some senior management are not provided with unfettered access to this information. (Smith Aff. ¶25.)

Defendant Judeann Stipe was previously an employee of AGI and its predecessor

Cyber.  As an employee of AGI, Stipe received an AGI laptop computer that she was to use while working for AGI.  (Smith Aff. ¶30.)  On January 11, 2004, Stipe was promoted to the position of Senior Sales Executive.  On June 1, 2004, Stipe became a part-time employee at her request.   (Smith Aff. ¶27.)  On June 28, 2004, Stipe resigned.  Stipes' last day with AGI was on July 1, 2004.  (Smith Aff. ¶¶33-34.) On June 28, 2004, Stipe was asked to return the laptop computer she had been issued as an employee.  (Smith Aff. ¶55.)  This laptop was returned on shortly after Stipes' resignation, the operating system having been reinstalled on July 2, 2004.  (Smith Aff. ¶68.)

After resigning from AGI, Stipe immediately began working for Defendant Acquired, a direct competitor of AGI.  (Smith Aff. ¶38.)  Emails sent from Judeann Stipe's Acquired work e-mail address, "Judeann Stipe [sales@acquiredlearning.com]", to client ETS (also a client if AGI) on July 11, 2004, July 12, 2004, and July 13, 2004, all reference her sales related work to ETS.  (Smith[2] Supp. Aff. ¶¶2-3, Exh. 1).  In these emails, she describes sales related activities, scheduling dates and confirming billing details with this client.  It was on and around these dates that she repeatedly and wrongfully accessed AGI's password protected database servers.  (Smith Supp. Aff. ¶4; Smith Aff. ¶¶70-79) (Leinbach Aff. ¶22.)

Defendant Clark Edwards is also a former employee of AGI.  Clark Edwards is formerly the treasurer of AGI.  Clark Edwards left AGI in March 2002, and joined Defendant Acquired in July 2004, when he and Defendant Novosat formed the Defendant corporation.  (Edwards Aff. ¶2) (Smith Aff. ¶39.)

---

[2] Supplemental Affidavit of Christopher Smith in Support of its Motion for Preliminary Injunction, filed November 22, 2005. References to the Supplemental Affidavit of Christopher Smith in Support of its Motion for Preliminary Injunction, filed November 22, 2005 are identified by "Smith Supp. Aff. ¶__" or "Smith Supp. Aff. Exh. __"

Defendant Dean Novosat is a former consultant to AGI, and does business as Defendant Sage Advice, Ltd. ("Sage Advice"). On July 19, 2004, Edwards and Novosat formed the Defendant corporation, Acquired. (Smith Aff. ¶39.) Similar to AGI, Defendant Acquired is actively engaged in the business of providing consulting services and training courses related to computers and software. (Smith Aff. ¶36.)

Neither Defendant Judeann Stipe nor Dean Novosat is an infant or incompetent person or in the military. (Fessenden[3] Aff. ¶10.)

In July 2004, when the AGI database was illegally accessed by Defendants, Defendant Acquired was the employer of individual Defendants Judeann Stipe, Clark Edwards, and Dean Novosat. (Smith Aff. ¶35; Smith Aff. ¶39.)

On September 1, 2005, AGI engaged Elysium Digital, LLC a forensic company, to analyze AGI's computer systems to determine if AGI's computer systems had been compromised. (Smith Aff. ¶54.) During the course of this investigation, Elysium Digital analyzed Stipe's AGI laptop and discovered that Stipe had logged onto AGI's database system and exported customer database files to the laptop after she was no longer an employee of AGI. (Smith Aff. ¶57.) Following Stipe's resignation, in accordance with AGI's procedures, on July 1, 2004, Stipe's passwords were revoked. (Smith Aff. ¶34.) However, several times on July 2, 2004, Stipe accessed AGI's secured, password protected computers in Woburn, Massachusetts without authorization, using forged passwords, and took information from the database system. (Smith Aff. ¶¶58-67, Exh. D-L.) Specifically, on July 2, 2004, Stipe exported AGI's customer information

---

[3] Affidavit of Giovanna H. Fessenden for American Graphic Institute's Motion For Default Judgment Against Defendants Judeann Stipe and Dean Novosat, filed January 4, 2006. References to Affidavit of Giovanna H. Fessenden in Support of Plaintiff American Graphic Institute's Motion For Default Judgment Against Defendants Judeann Stipe and Dean Novosat, filed January 4, 2006 are identified by "Fessenden Aff. ¶ __" or "Aff. Exh. __."

5

for New York, Delaware, New Jersey, Maryland, and Washington D.C., downloading more than 22,500 customer records, including 14,000 e-mail records from AGI's secured servers and copied them to her laptop computer in Lancaster, PA. (Smith Aff. ¶¶55-69, Exhs. D-M.)

Stipe, acting as an agent on behalf of Defendant Acquired and for Acquired's benefit, continued to access AGI's confidential customer list and customer scheduling databases on other occasions, without AGI's consent. (Smith Aff. ¶¶58-67, 72-79; Eaddy Aff. ¶13-23.) Stipe accessed AGI's server on at least two other occasions in July and opened AGI's customer database system, accessing more than 63,000 confidential AGI customer records and other AGI confidential information. (Smith Aff. ¶71.) In particular, on July 12, 2004, and July 14, 2004, Stipe used forged passwords to break into the AGI customer database. Judeann Stipe admitted that she accessed AGI's databases on July 12, 2004 and July 14, 2004. (Stipe Aff. ¶11.) The customer database is a password protected database stored on AGI's file server in Woburn, Massachusetts, and it was accessed from Internet protocol ("IP") address 68.82.227.55, using software and computer equipment provided by Sage Advice, Ltd., which is a consulting company operated by Dean Novosat. (Smith Aff. ¶¶72-74, Exhs. N, O; Eaddy Aff. ¶¶13-16.) None of these individuals were authorized to access the password protected database. (Smith Aff. ¶73.)

As a result of Defendants' unlawful activities on AGI's server, AGI has incurred remedial and investigative expenses exceeding $5,000 that are directly attributable to Defendants' unauthorized access to AGI's trade secrets and confidential information. (Smith Aff. ¶80.) Specifically, when AGI suspected the security breach, it engaged its

6

information technology ("IT") service provider to reset permissions, passwords, and security privileges, spending an estimated $5,000. (Smith Aff. ¶80.) AGI also hired Elysium Digital, LLC to determine whether AGI's computer systems have been compromised. (Smith Aff. ¶80.) To date, the cost incurred by AGI for Elysium has been $550 for testing and site visit preparations, $1,555 for onsite review and analysis of data gathered, totaling $2,105. (Smith Aff. ¶80.) Also, in order to remedy the breach, AGI is in the process of purchasing new routers and firewalls, which require setup and configuration from its IT provider, totaling an estimated $25,000. (Smith Aff. ¶80.) Thus, the remedial and investigative expenses incurred totaled to date are $7,105, and once the new firewalls and routers are in place, AGI's total remedial and investigative expenses will be at least $32,105. (Smith Aff. ¶80.)

Defendants Judeann Stipe and Dean Novosat and the other named defendants acted purposely to acquire information to which they knew they were not entitled, for the purpose of securing unfair and unlawful profits for themselves. Through their unauthorized access to AGI's computer databases, Defendants obtained AGI's valuable confidential business information and other confidential proprietary information, and used the information to solicit AGI's customers. (Smith Aff. ¶79.)

In 2004 and 2005, Defendants Judeann Stipe and Dean Novosat used wrongfully converted AGI customer records to send bulk-email (SPAM) to AGI customers. This list has been used repeatedly to send thousands of unsolicited SPAM messages to AGI customers. (Smith Aff. ¶81.)

In addition to the remedial and investigative expenses incurred, AGI has also lost significant amounts of business from two substantial clients, Education Testing Services,

7

Inc. ("ETS") and Adobe Systems, Inc. ("Adobe") as a direct result of Defendants' unlawful actions. (Smith Aff. ¶82-94.) Financial records indicate that the relationship with these two clients exceeds $1.25 million. (Smith Aff. ¶82.)

Sometime in June 2004, while Stipe was still employed by AGI, Stipe received sales orders and inquiries from ETS. ETS has been an AGI client since 1998. Stipe never reported these June 2004 sales orders to AGI's management and accounting department. Instead, these sales were wrongfully diverted and converted by Defendant Acquired. (Smith Aff. ¶¶84-94; Exhs. U-Y.)

III.
Procedural History

On September 14, 2005, Plaintiff AGI filed a Complaint against the Defendants in this Court. With respect to Defendants Judeann Stipe and Dean Novosat, the Complaint alleges, in nine counts, violation of 18 U.S.C. §1030(a)(4) and §1030(a)(5), trade secret misappropriation, tortious interference with business advantage, breach of the common law duty of loyalty, unfair competition, and conversion. On the same day that Plaintiff filed its Complaint, the Court issued to each of the Defendants, including Judeann Stipe and Dean Novosat, a Summons In A Civil Action which, in part, notified each Defendant that it must, within twenty days after service of the Summons, serve upon the attorney for the Plaintiff, an Answer to the Complaint and file the Answer with the Clerk of Court. On September 19, 2005, attorney Jason Morgan accepted service on behalf of both Judeann Stipe and Dean Novosat. (Fessenden Aff. ¶¶3-4, Exhs. A-B)

By the expiration of the twenty-day period specified on the Summons, Defendants had not filed an Answer to the Complaint with the Clerk of this Court, nor had it served a copy of the Answer upon the Plaintiff. [4]

Pursuant to Fed. R. Civ. P. 12, the Defendants had twenty days to file an answer or motion in response to the Complaint. On November 2, 2005, Plaintiff, after either conferring or attempting to confer in good faith with the Defendants for the purpose of determining whether they would consent to entry of default against Defendants Acquired and Sage Advice, filed a Request For Notice Of Default. The Court granted Plaintiff's request on November 8, 2005. Accordingly, the Court gave notice to the Defendants that Defendants Acquired and Sage Advice had been defaulted on November 8, 2005.

On December 8, 2005, AGI filed a Motion for Default Judgment Against Acquired Learning, Inc. and Sage Advice, Ltd.

On September 26, 2005, AGI filed a Motion for Preliminary Injunction and a memorandum of law in support of its Motion for Preliminary Injunction. On November 10, 2005, the Court issued a Notice that a hearing on AGI's Motion for Preliminary Injunction would be held at 10:00AM on December 5, 2005.

On December 5, 2005, AGI appeared before the Court in order to present its argument in support of granting the Motion for Preliminary Injunction. Defendants Judeann Stipe and Dean Novosat failed to appear at this hearing and as a result, on

---

[4] On October 19, 2005, more than 20 days after the Complaint was filed, the individual named defendants Clark Edwards, Dean Novosat, and Judeann Stipe filed an answer to the complaint *pro se*. A corporate defendant may not be represented *pro se* in federal court. Archery USA, Inc. v. United States, No. 02-CV-10643-JLT, 2003 U.S. Dist. LEXIS 11197. at *4 (D. Mass. Mar. 27, 2003). Consequently, corporate defendants Acquired and Sage Advice. have failed to respond to the Complaint filed on September 14, 2005.

9

December 5, 2005, the Court entered a Notice of Default as to Defendants Judeann Stipe, Dean Novosat, Clark Edwards, and Carl Leinbach.

On December 15, 2005 Defendants Dean Novosat and Judeann Stipe each filed non-notarized letters addressed to the Court, requesting that the Court "have the Notice of Default lifted." AGI filed its opposition to Judeann Stipe and Dean Novosat's requests to set aside default on December 22, 2005. In response to AGI's opposition, Dean Novosat filed an affidavit in objection to AGI's opposition on January 3, 2006.

IV.
<u>Defendants Judeann Stipe and Dean Novosat Have Failed to Defend This Action and Plaintiff is Entitled to Final Judgment By Default and Injunction</u>

Rule55(b)(2) provides that "the party entitled to a judgment by default shall apply to the court" to seek such a judgment. Fed. R. Civ. P. 55(b)(2). In calculating damages, it is within this Court's discretion to issue a final judgment without a hearing or to hear evidence relating to damages. <u>Ortiz-Gonzales v. Fonovisa</u>, 277 F.3d 59, 64 (1st Cir. 2002).

"There is no question that, default having been entered, each of plaintiff's allegations of fact must be taken as true and each of its claims must be considered established as a matter of law." <u>In re The Home Rests., Inc.</u>, 285 F.3d 111, 114 (1st Cir. 2002) (Citations omitted; internal punctuation omitted).

Here, the Clerk entered a Notice of Default as to Defendants Judeann Stipe, Dean Novosat, Clark Edwards, and Carl Leinbach Notice on December 5, 2005. The Complaint filed, on September 14, 2005, establishes a cause of action for each of the seven counts recited and thus establishes the liability of the Defendants Judeann Stipe and Dean Novosat.

A. <u>The Facts Alleged, Substantiated by Evidence of Record, Establish Defendants' Liability for Plaintiff's Claims</u>

<u>Count I:  Computer Fraud and Abuse – 18 U.S.C. § 1030(a)(4)</u>

When the Defendants knowingly broke into the computer databases owned by AGI, they violated the Computer Fraud and Abuse Act.  Pursuant to 18 U.S.C. § 1030 (a)(4), anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…shall be punished . . . ."  18 U.S.C. § 1030 (a)(4).

As detailed above, the evidence in this case overwhelmingly indicates that defendants have violated the CFAA.  On multiple occasions after Stipe resigned from AGI and began working for a competing company, Defendant Acquired, Stipe accessed AGI secured computer databases using forged or wrongfully acquired passwords.  (Smith Aff. ¶¶58-68; 71-77.)  On at least three occasions in July, Defendants Acquired and Sage Advice and their agents Dean Novosat and Judeann Stipe, knowingly accessed AGI's customer database system without authorization. (Smith Aff. ¶78.)   Defendants gained access to more than 63,000 confidential AGI customer records and other AGI confidential information.  (Smith Aff. ¶71.)

These actions were taken with the intent to defraud AGI.  Through their unauthorized access to AGI's computer databases, Defendants obtained and used the ill-gotten information to solicit new customers. (Smith Aff. ¶¶78-79.)

<u>Count II: Computer Fraud and Abuse – 18 U.S.C. § 1030(a)(5)</u>

Under § 1030 (a)(5), anyone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes . . .  loss to 1 or more

11

persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value . . . shall be punished . . . ." See 18 U.S.C. §1030 (a)(5)(A)-(B).

AGI has incurred remedial and investigative expenses exceeding $5000 that are directly attributable to Defendants' unauthorized access to AGI's trade secrets and confidential information. (Smith Aff. ¶80.) Moreover, AGI's continues to suffer even more significant economic losses. A plaintiff may collect damages for its lost business, business goodwill, and for the cost of restoring parts of its business that were affected by competitor's violations because all of those things constitute economic damages that are recoverable under the Act. See Creative Computing v Getloaded.com, LLC, 386 F.3d 930, 935 (9th Cir. 2004); but see Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004). Here, AGI's reputation and goodwill have been harmed by the Defendants' actions and AGI continues to lose business as a result. For example, the Defendants cumulative acts have assisted them in interfering with the relationship between AGI and ETS, and AGI and Adobe. The relationships with these two clients alone have earned AGI more than $1.25 million. (Smith Aff. ¶82.)

Count III: Common Law Misappropriation of AGI's Trade Secrets

Massachusetts common law provides for a remedy in tort for trade secret misappropriation. "A list of customers may properly constitute a trade secret, 'if the person entitled to a trade secret wishes to have its exclusive use in his own business, he must not fail to take all proper and reasonable steps to keep it a secret.'" Export Lobster Co., Inc. v. Bay State Lobster Co., Inc., No. 92-6348-E, 1994 Mass. Super. LEXIS 90, at

*19 (Mass. Super. Ct. Oct. 31, 1994) citing J.T. Healy & Son Inc. v. James A. Murphy & Son. Inc., 357 Mass. 728, 736, 738 (1970).

In this case, AGI has offered evidence that the information contained on the customer list and customer scheduling databases is of a type not known outside of the business and could not easily or properly be acquired or duplicated by others. (Silverman Dec. ¶¶4-10; Shaffstall Dec. ¶¶3-5; Smith Aff. ¶¶15-26.) This confidential information is subject to trade secret protection. (Silverman Dec. ¶¶4-10; Shaffstall Dec. ¶¶3-5; Smith Aff. ¶¶15-26.)

Additionally, AGI has employed reasonable security measures to safeguard the secrecy of its trade secrets and proprietary information. (Smith Aff. ¶¶19; 23-26.)

Finally, Massachusetts case law "undoubtedly prescribes former employees from misappropriating the trade secrets learned during their former employment." Harvard Apparatus, Inc., v. Cohen, 130 F. Supp. 2d 161, 174 (D. Mass. 2001). As detailed above, Defendants did not have permission to use or disclose AGI's trade secrets or confidential information.

Count IV: Trade Secret Misappropriation – Mass. G.L. ch. 93, §42

A person who "unlawfully takes, carries away, conceals, or copies, or by fraud or by deception obtains, from any person or corporation, with intent to convert to his own use, any trade secret" is liable under Mass. G.L. ch 93, §42 for misappropriation of trade secrets.

As detailed above, AGI has presented sufficient evidence that Defendants Judeann Stipe and Dean Novosat misappropriated AGI's trade secrets when they, without

authorization, accessed and used information from AGI's secured customer and customer scheduling databases.

Count V: Tortious Interference With Business Advantage

To succeed on a claim of tortious interference with a business advantage claim, AGI must show that (1) there was a business relationship or contemplated contract of economic benefit; (2) the defendants had knowledge of such a relationship; (3) the defendants interfered with the relationship through improper motive or means; and (4) plaintiff's loss of advantage directly resulted from defendants' conduct.  See American Private Line Services, Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992) citing, United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20, 12 (1990).

The evidence demonstrates that the Defendants knowingly interfered with at least two specific customers, ETS and Adobe. (Smith Aff. ¶¶82-94.)  Furthermore, Defendants accessed the customer list database and contacted customers with whom AGI has an ongoing business relationship.  (Smith Aff. ¶81.)  AGI often has repeat customers and thus has a reasonable expectation that these customers would again retain its services.

By contacting known customers of AGI using information unlawfully obtained, Defendants employed improper means for interfering with AGI's business relationships. By intentionally accessing AGI's databases and confidential business information with the intent to take customers away from AGI, Defendants acted with improper motive.

Finally, AGI's loss of advantage is the direct result of the Defendants' actions. Had Defendants not interfered with the relationship between AGI and ETS, or AGI and Adobe, AGI would have maintained a business relationship both ETS and Adobe.  The

relationships with these two clients alone has earned AGI more than $1.25 million.

Count VI: Breach of Common Law Duty of Loyalty

Massachusetts law provides that a trusted executive may not actively compete with her employer during her employment. <u>Chelsea Industries, Inc. v. Gaffney</u>, 389 Mass 1, 11 (Mass. 1983). The evidence in this case demonstrates that Defendant Judeann Stipe breached her duty of loyalty to AGI.

Defendant Judeann Stipe had been a trusted executive at AGI. (Smith Aff. ¶27.) On June 21, 2004, while defendant Stipe was still employed by AGI, an AGI customer, ETS, contacted defendant Judeann Stipe for the purpose of scheduling training to be provided by AGI. Defendant Stipe did not enter this customer confirmation with AGI. Ten days after defendant Stipe resigned from AGI, she contacted this same AGI customer and discussed new pricing options and dates for the scheduled training with defendant Acquired. Defendant Acquired issued two invoices totaling $8,700 for the training it provided to this AGI customer. (Smith Aff. ¶¶84-91)

Count VII: Common Law Unfair Competition

Defendant Acquired has used AGI's course titles and course descriptions on defendant Acquired's website and on defendant Acquired's advertising materials. (Smith Aff. ¶40). Additionally, Defendants have misappropriated and used AGI's confidential customer information and other proprietary content. These two facts, in conjunction with the fact that Defendant Acquired operates from the same location previously occupied by Plaintiff AGI has created a likelihood of consumer confusion. This confusion has cost AGI profits and has damaged and will continue to damage AGI's reputation and business goodwill.

<u>Count X: Common Law Conversion</u>

Under Massachusetts common law, a defendant is liable for conversion when it has "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which [it] has no right of possession at the time . . . ." <u>Abington Natl. Bank v. Ashwood Homes, Inc.</u>, 19 Mass.App.Ct. 503, 507 (1985). Defendant Acquired intentionally and wrongfully exercised control over AGI's trade secrets when it used the wrongfully obtained customer lists to contact AGI's customers.

B.  <u>Damages</u>

(i) <u>Monetary Damages</u>

In this case the damage suffered by AGI are not susceptible to mathematical computation. See <u>KPS & Associates, Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 44 (1st Cir. 2003). Given this fact and the complexity of the damages suffered by AGI, plaintiff respectfully requests a hearing on damages. See, Fed. R. Civ. P. 55(b)(2). Additionally, plaintiff requests ninety (90) days of discovery on the issue of damages.

Thus, Plaintiff AGI respectfully requests a hearing on damages for the purpose of:

a.  determining and awarding AGI its damages and injunctive relief as set forth in 18 U.S.C. 1030(g) for defendants' deliberate and willful violation of 18 U.S.C. § 1030(a)(4) as alleged in Count I of the complaint;

b.  determining and awarding AGI its damages and injunctive relief as set forth in 18 U.S.C. 1030(g) for defendants' deliberate and willful violation of 18 U.S.C. § 1030(a)(5) as alleged in Count II of the complaint;

c.  determining and awarding AGI its damages and injunctive relief for defendants' deliberate and willful misappropriation of trade secrets as

      alleged in Count III of the complaint;

    d. determining and awarding AGI its damages and statutory double damages for defendant's deliberate and willful misappropriation of trade secrets in violation of Mass. G.L. ch. 93, §42 as alleged in Count IV of the complaint;

    e. determining and awarding AGI its damages for defendants' deliberate and willful tortious interference with AGI' business advantage as alleged in Count V of the complaint;

    f. determining and awarding AGI its damages for defendant Stipes' deliberate and willful breach of the common law duty of loyalty as alleged in Count VI of the complaint;

    g. determining and awarding AGI its damages for defendants' deliberate and willful unfair competition and conscious disregard of the rights of AGI as alleged in Count VII of the complaint;

    h. determining and awarding AGI its damages for defendants' deliberate and willful conversion of AGI's property as alleged in Count X of the complaint; and

    i. awarding AGI its cost of suit and attorneys' fees.

 (ii) <u>Injunctive Relief</u>

Monetary relief alone will not be adequate to compensate AGI for the harms it has suffered because of the egregious actions of the Defendants. If the Defendants are not enjoined from further trade secret misappropriation, computer fraud and abuse, tortious interference with a business advantage, unfair competition, and conversion, the harm to

17

AGI's business, reputation, and goodwill can only increase. Furthermore, without an injunction prohibiting the Defendants from further use of AGI's trade secrets and confidential information, the Defendants will continue to benefit from their wrongful acts. Consequently, AGI respectfully requests that this Court issue an Order enjoining defendants Judeann Stipe, Dean Novosat and their respective agents, employees, officers and directors, attorneys, successors, licensees, and assigns, and all those persons acting in concert and combination with them:

    a. From accessing or attempting to access AGI's computer systems, and from using directly or indirectly any information they obtained, learned or derived from accessing AGI's computer systems in the past;

    b. From making any use, either directly or indirectly, of AGI's Customer Information, including without limitations initiating any contact with any persons, businesses, entities, agents, or anyone else associated with AGI's customers;

    c. From engaging in any conduct or actions to compete with AGI for a period of thirty-six (36) months from the date of entry of this Order;

    d. From making any use, either directly or indirectly, of AGI's Customer Information, including without limitations initiating contact with any persons, businesses, entities, agents, or anyone else associated with AGI;

    e. For a period of thirty-six (36) months from the date of entry of this Order, from engaging in the electronic publishing software training business; and

    f. To deliver to counsel of record for AGI forthwith all copies of AGI's Customer Information in his or her or its possession, custody or control,

including without limitation any and all information contained in computer files, diskettes, backups, course materials, and marketing materials.

## **CONCLUSION**

AGI respectfully requests that this Court enter an order of default against defendants Judeann Stipe and Dean Novosat.

AMERICAN GRAPHICS INSTITUTE, INC.

By their attorneys,

Dated: January 4, 2006
/s/ Giovanna H. Fessenden
John L. DuPré   (BBO No. 549659)
David J. Brody  (BBO No. 058200)
Giovanna H. Fessenden (BBO No. 654681)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:  (978) 341-0136

## **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 4, 2006.

  /s/ Giovanna H. Fessenden

## LOCAL RULE 7.1(A)(2) CERTIFICATION

    I, Giovanna Fessenden, hereby certify that I have conferred with Judeann Stipe and Dean Novosat and attempted in good faith to resolve the issues raised in this motion.

                                            /s/Giovanna H. Fessenden
                                               Giovanna H. Fessenden

596378