UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN GRAPHICS INSTITUTE, INC.,<br><br>            Plaintiff,<br><br>       v.<br><br>ACQUIRED LEARNING, INC., JUDEANN STIPE, DEAN NOVOSAT, CLARK EDWARDS, SAGE ADVICE, LTD., and CARL LEINBACH,<br><br>            Defendants. | Civil Action No. 05-11857 JLT |

**PLAINTIFF AMERICAN GRAPHICS INSTITUTE, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff AGI seeks summary judgment in this matter because there are no genuine issues of material fact as to the defendants' liability with respect to Counts I-IV of the Complaint.  The undisputed evidence shows that the defendants (1) intentionally accessed computer databases owned by AGI without authorization and caused a loss to AGI in an amount exceeding $5,000 within a one year period, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 (CFAA), and (2) improperly accessed AGI's customer list and customer scheduling databases and took information thereby misappropriating AGI's trade secrets.  In addition, there is no genuine issue of material fact of defendants tortious interference with AGI's business advantage.  The uncontroverted evidence demonstrates that the defendants willfully interfered with an advantageous relationship between AGI and its customers in violation of Massachusetts law.  Accordingly, AGI is entitled to summary judgment as a matter of law as to those counts.

# I. STATEMENT OF FACTS

Plaintiff AGI is actively engaged in the business of providing consulting services and training courses related to computers, software, and electronics. (Smith PI Aff. ¶5.) AGI and its predecessor, Cyber Solutions, Inc ("Cyber") have been in operation for ten years.[1] (Smith PI Aff. ¶2.) During that time, AGI has built a strong and positive reputation among publishers and industry professionals. (Silverman Dec. ¶8; Shaffstall Dec. ¶2; Smith PI Aff. ¶15-17.) As a result, AGI has amassed an extensive customer list, which is stored in a confidential customer database system, and customer scheduling database system. These database systems contain detailed confidential information regarding AGI's customers. The information includes the name, address, phone number, email address and credit card records for each customer. The customer list and customer scheduling database also contain information on the software systems, training plans, software upgrade plans, the software versions being used by each customer as well as other technical information. ("Smith PI Aff. ¶¶19-20; Shaffstall Dec. ¶¶3-4.) In fact, AGI's clients consider this information to be confidential and AGI has confidentiality and non-disclosure agreements with many of its clients that preclude the dissemination of the information contained in the customer database and customer scheduling database. (Smith PI Aff. ¶22, Exh. A; Silverman Dec. ¶5)

At all relevant times, the confidential client information stored in AGI's database systems has been secured. AGI employees are provided with access to AGI's database systems on a need-to-know basis. Only select AGI employees are provided access to these

---

[1] References to affidavits filed by the parties in this action are identified by the last name of the affiant followed by "Aff. ¶ __" or "Aff. Exh. __."  References to the affidavits filed in support of Plaintiff's Motion for Preliminary Injunction, filed September 26, 2005 are identified by the last name of the affiant followed by "PI Aff. ¶ __" or "PI Aff. Exh. __." References to the Supplemental Affidavit of Christopher Smith in Connection with Plaintiff AGI's Supplemental Memorandum in Support of its Motion for Preliminary Injunction, filed on November 21, 2005 are identified by "Smith PI Supp. Aff. ¶__" or "Smith PI Supp. Aff. Exh.__."

2

database records, and even those who are provided with access may only have tiered access privileges, with only management being provided full database access to the database systems. (Smith PI Aff. ¶24.)

Only sales personnel and some management are authorized to access AGI's database systems. The databases are secured by passwords, and only authorized users are provided with the special software, password, or location of the databases. Even some senior management are not all provided access to this information. (Smith PI Aff. ¶25.)

Defendant Judeann Stipe was previously an employee of Cyber and AGI. As an employee of AGI, Stipe received an AGI laptop computer that she was to use while working for AGI. (Smith PI Aff. ¶30.) She was hired on April 10, 1996, as a part-time employee for Cyber, working two days per week providing clerical support. In October of 1999, Stipe moved into a sales capacity, becoming AGI's only sales representative with the title of Director of Sales. On January 11, 2004, Stipe was promoted to the position of Senior Sales Executive. On June 1, 2004, Stipe became a part-time employee at her request. (Smith PI Aff. ¶27.) On June 28, 2004, Stipe resigned. Stipes' last day with AGI was on July 1, 2004. (Smith PI Aff. ¶¶33-34.)

As a sales employee, Stipe was originally given "read only" access to AGI's customer database system in Woburn, Massachusetts. When she was promoted to a management position, she was provided with full access to AGI's customer database system. As part of the AGI management team, Stipe held a position of trust and confidence. Stipe's full access to the customer database system enabled her to edit, export and delete records. To access the database system, Stipe was aware of the location, IP address, port number, password methods

3

and security protocols used by AGI. (Smith PI Aff. ¶31.) Following Stipe's resignation, Stipe's password to the AGI's customer database system was revoked. (Smith PI Aff. ¶34.)

Defendant Clark Edwards is also a former employee of AGI. Clark Edwards is formerly the treasurer of AGI. Dean Novostat is a former consultant to AGI, and does business as Sage Advice, Ltd. On July 19, 2004, defendants Edwards and Novosat formed the defendant corporation, Acquired Learning, Inc. ("Acquired"). (Smith PI Aff. ¶39.) Similar to AGI, defendant Acquired is actively engaged in the business of providing consulting services and training courses related to computers and software. (Smith PI Aff. ¶36.)

Stipe advised AGI management personnel that the reason she was resigning from AGI on June 28, 2004, was to become a full-time "homemaker." (Smith PI Aff. ¶33.) In the fall of 2004, however, AGI discovered that Stipe began working for defendant Acquired, which was a direct competitor of AGI. (Smith PI Aff. ¶38.)

In the late fall of 2004, AGI also discovered that defendant Acquired and its partner, System Solutions, Inc. had copied significant portions of AGI's website onto their respective websites without AGI's permission. As a result of this unauthorized use of AGI's copyrighted and proprietary content, AGI and Christopher Smith initiated a copyright infringement and unfair competition lawsuit in this Court against defendants Acquired, Judeann Stipe, Dean Novosat, Clark Edwards and the president of System Solutions, Inc., and System Solutions, Inc. and Richard Wein, Civil Action No. 04-12611-JLT. (Smith PI Aff. ¶40.)

Through the course of discovery in the copyright infringement suit, in August 2005, AGI determined through documents produced by Carl Leinbach pursuant to a subpoena *duces tecum*, that Stipe had been directing Leinbach to access AGI's scheduling database to gather AGI's customer information for defendant Acquired. (Smith PI Aff. ¶¶41-54, Exh. C.) After

4

discovering this information in August 2005, Christopher Smith, president of AGI, became suspicious that Stipe and others may have attempted on other occasions to obtain AGI's confidential customer information from AGI's database systems. AGI investigated the possibility that Stipe and others may have attempted to access AGI's customer information on other occasions. On September 1, 2005, AGI engaged Elysium Digital, LLC, a forensic company, to analyze AGI's computer systems to determine if AGI's computer systems had been compromised. (Smith PI Aff. ¶54.)

During the course of Christopher Smith's investigation, Stipe's AGI laptop was analyzed, and it became apparent that Stipe had logged-onto AGI's database system and exported customer database files to the laptop after she was no longer an employee of AGI. (Smith PI Aff. ¶57; Smith Aff. ¶¶5-7, Exh. 2.) Several times on July 2, 2004, Stipe accessed AGI's secured, password protected computers in Woburn, Massachusetts without authorization, and took information from the database system. (Smith PI Aff. ¶¶58-67, Exh. D-L.) At a time when Stipe was no longer an employee of AGI, she accessed AGI's secured server on July 2, 2004, for the purpose of wrongfully downloading and converting customer records. (Smith PI Aff. ¶59.) Specifically, on July 2, 2004, Stipe exported AGI's customer information for New York, Delaware, New Jersey, Maryland, and Washington D.C., downloading more than 22,500 customer records, including 14,000 e-mail records from AGI's secured servers and copied them to her laptop computer in Lancaster, PA. (Smith PI Aff. ¶¶55-69, Exhs. D-M.)

Defendant Stipe and others continued to access AGI's confidential customer list and customer scheduling databases on other occasions, without AGI's consent. (Smith PI Aff. ¶¶58-67, 72-79; Eaddy Aff. ¶13-23.) Stipe, Novosat or Edwards accessed AGI's server on at

5

least two other occasions in July and opened AGI's customer database system, accessing more than 63,000 confidential AGI customer records and other AGI confidential information. (Smith PI Aff. ¶71.) In particular, on July 2, 2004, July 12, 2004, and July 14, 2004, Judeann Stipe without permission, broke into the AGI customer database. The customer database is a password protected database stored on AGI's file server in Woburn, Massachusetts, and it was accessed from internet protocol ("IP") address 68.82.227.55, using software and computer equipment provided by Sage Advice, Ltd., which is a consulting company operated by Dean Novosat. (Smith PI Aff. ¶¶72-74, Exhs. N, O; Eaddy Aff. ¶¶13-16.) None of these individuals were authorized to access the password protected database. (Smith PI Aff. ¶73.)

Despite defendant Stipe's denial of impropriety, she admitted to the July 12 and July 14, 2004 break-ins. As defendant Stipe stated, "*I did access the [AGI] customer database as stated July 12th & 14th from my home computer using a laptop I borrowed from Sage Advice, for approximately 4 minutes each day.*" (Emphasis added.) (Stipe Aff. ¶11).

As a result of defendants' unlawful activities on AGI's server, AGI has incurred remedial and investigative expenses exceeding $5,000 that are directly attributable to defendants' unauthorized access to AGI's trade secrets and confidential information. Specifically, when AGI suspected the security breach, it engaged its information technology ("IT") service provider to reset permissions, passwords, and security privileges, and AGI purchased new routers and firewalls, which require setup and configuration from its IT provider spending an estimated $8,597. AGI also hired Elysium Digital, LLC to determine whether AGI's computer systems have been compromised and has spent over $5,000. Thus, to date, the remedial and investigative expenses incurred by AGI are well over $5,000. (Smith Aff. ¶¶2-4, Exhs. 1 and 2; Smith PI Aff. ¶80.)

6

Defendants Stipe, Novosat, Edwards and Acquired acted purposefully to acquire information to which they knew they were not entitled, for the purpose of securing unfair and unlawful profits for themselves. Through their unauthorized access to AGI's computer databases, they obtained AGI's valuable confidential business information and other confidential proprietary information, and used the information to solicit new customers. (Smith PI Aff. ¶79.)

In 2004 and 2005, defendants Stipe, Novosat, Edwards, and Acquired used wrongfully converted AGI customer records to send bulk-email (SPAM) to AGI customers. This list has been used repeatedly to send thousands of unsolicited SPAM messages to AGI customers. (Smith PI Aff. ¶81.)

As a direct result of defendants' unlawful actions, AGI has lost at least significant amounts of business from two substantial clients, Education Testing Services, Inc. ("ETS") and Adobe Systems, Inc. ("Adobe"). (Smith PI Aff. ¶82-94.) Financial records indicate that the relationship with these two clients exceeds $1.25 million. (Smith PI Aff. ¶82.)

Further, sometime in June 2004, while Stipe was still employed by AGI, defendant Stipe received sales order contracts from ETS. ETS has been an AGI client since 1998. Defendant Stipe never reported these June 2004 sales orders to AGI's management and accounting department. Instead, these AGI contracts were wrongfully diverted and converted by defendants Stipe, Novostat, Edwards, and Acquired. (Smith PI Aff. ¶¶84-94; Exhs. U-Y.)

## II. ARGUMENT

**A.     Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Moreover, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials … but the adverse party's response … must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e); see also Roger Edwards, LLC v. Fiddes & Sons, Ltd., 387 F.3d 90, 94 (1st Cir. 2004) ("Conjectural allegations, conclusory assertions, and inconsequential evidence do not suffice to establish a genuine issue of fact." [Internal quotation marks omitted.]).

**B.     There Are No Genuine Issues Of Material Fact In This Case As To Defendants' Violation of the CCFA**

There is no genuine issue of material fact with respect to the defendants' violation of the CFAA. The uncontroverted evidence reveals the defendants intentionally[2] accessed the computer databases owned by AGI without authorization and caused a loss to AGI in an

---

[2] See *Computer Networks, Inc. v. Sears, Roebuck & Co.*, 2004 U.S. Dist. LEXIS 10574 (D. Mass. 2004) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."). Here, the defendants have admitted unauthorized access and damage has resulted. Any conclusory denials, therefore, are meritless.

amount exceeding $5,000 within a one year period. Accordingly, AGI is entitled to a judgment as a matter of law on this count.

The CFAA's "civil enforcement provision allows any person who suffers damage or loss from conduct prohibited by the statute to bring an action under its terms, but only if the plaintiff can satisfy one of five factors."[3] (Internal quotation marks omitted.) *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. Appx. 559, 562 (2d Cir. 2006). Under § 1030 (a) (5), the civil enforcement provision is satisfied by a showing that the defendant "intentionally [accessed] a protected computer without authorization, and as a result of such conduct, [caused] . . . loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value . . . ." See 18 U.S.C. §1030 (a)(5)(A)-(B). "Loss" includes investigating and remedying damage to a computer, or a cost incurred because the computer's service was interrupted. See *Nexans Wires S.A. v. Sark-USA, Inc.*, supra, 166 Fed. Appx. 562.

First, defendant Stipe accessed AGI's confidential customer database on July 2, 2004 and exported over 30,000 confidential customer records. Stipe admits that she was not employed by AGI on July 2, 2004. (Smith Aff. ¶¶5-7.) Second, on multiple occasions after Stipe began working for the defendant corporation, Acquired, she accessed AGI secured computer databases without permission and opened AGI's customer database system, accessing more than 63,000 confidential AGI customer records and other AGI confidential information. (Smith PI Aff. ¶71.) The database was accessed using a Sage Advice laptop.

---

[3] In relevant part, 18 USCS § 1030 (g) provides: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection

(Eaddy Aff. ¶¶13, 16, 17-23; Smith PI Aff. ¶¶75-76; Novosat Aff. ¶17.) Defendants had no authorization to access these databases and their actions clearly indicate that they knew they had no authorization. (Smith PI Aff. ¶78.)

Furthermore, defendants acted with the intent to defraud AGI. Defendants acted purposefully to acquire information to which they knew they were not entitled, for the purpose of securing unfair and unlawful profits for themselves. Through their unauthorized access to AGI's computer databases, defendants obtained AGI's valuable trades secrets, confidential business information and other confidential proprietary information, and used the information to solicit new customers. (Smith PI Aff. ¶¶78-79.)

The defendants' own affidavits submitted in this case clearly demonstrate the defendants' violation the CCFA. First, under highly suspicious circumstances, Stipe *admits*[4] that she intentionally accessed AGI's password protected database on July 12, 2004 and July 14, 2004, using a laptop computer borrowed from Sage Advice (Stipe Aff. ¶11). Defendant Novosat and Sage Advice acknowledge providing this laptop computer to Stipe (Novosat Aff. ¶¶15-18). Defendant Stipe acknowledges that the AGI database she accessed was password protected (Stipe Aff. ¶11).

Moreover, defendant Stipe's affidavit is plagued with inaccuracies. For example, her averment that she was unemployed at the time she illegally broke-in to AGI's password protected computer database server is simply untrue. (Stipe Aff. ¶11). Defendant Stipe clearly was employed by defendant Acquired on the July 11 and 12 dates she broke into the AGI database. E-mails sent from Judeann Stipe's Acquired work e-mail address, "Judeann Stipe

---

(a)(5)(B)."

[4] As defendant Stipe stated, "*I did access the [AGI] customer database as stated July 12th & 14th from my home computer using a laptop I borrowed from Sage Advice, for approximately 4 minutes each day.*" (Emphasis added.) (Stipe Aff. ¶11).

[sales@acquiredlearning.com]", to client ETS on July 11, 2004, July 12, 2004, and July 13, 2004 all reference her sales related work for ETS. (Smith PI Supp. Aff. ¶¶2-3, Exh. 1). In these e-mails, she describes sales related activities, scheduling dates and confirming billing details with this client. It was on and around these dates that she repeatedly and wrongfully accessed AGI's password protected database servers. (Smith PI Supp. Aff. ¶4; Smith PI Aff. ¶¶70-79). Defendant Leinbach confirms that Stipe was working for Acquired in the summer of 2004 (Leinbach Aff. ¶22). Further, it is suspiciously coincidental that Stipe requested to "borrow" a computer from Dean Novosat in June of 2004, which is the laptop she alleges to have used to improperly access AGI's customer database. (Stipe ¶11).

  Equally suspect is defendant Stipe's averment that she was not looking for customer information while accessing the AGI customer database without permission, and while she was working for a competing company. Not only is this assertion dubious on its face, it is completely implausible as Stipe established a pattern of seeking out client information from other sources. For example, by defendants' own admission, Stipe contacted an instructor for AGI, defendant Leinbach, and requested information about an AGI customer, Harley Davidson (Leinbach Aff. ¶32). In addition, the high-speed data connections which AGI uses in its office and which Comcast provides to one of the defendants would have allowed for the transfer all of AGI's customer records in less than ten minutes. (Smith PI Supp. Aff. ¶5). As defendant Stipe had been working and using the Plaintiff's database for nearly a decade, she would have been able to cull the database for the most valuable information, locate, and download this information in an even shorter period of time. (Smith PI Supp. Aff. ¶6).

  Further, Defendant Novosat suggests that he has provided IT services for more than a decade (Novosat Aff. ¶6), yet he claims to have no knowledge of how to access AGI's

computer servers (Novosat Aff. ¶¶20-22).  Novosat fails to mention, however, that for more than seven years he and his company, Sage Advice, were the exclusive technology consultants and system integrators for Plaintiff AGI. (Smith PI Supp. Aff. ¶7).  In this role, defendant Novosat and Sage Advice set up all AGI servers, established user accounts, and passwords to AGI computers and servers. (Smith PI Supp. Aff. ¶8).  One of the services provided by Sage Advice and Novosat was the establishment of a remote network connection from defendant Stipe's home into the AGI computer servers. (Smith PI Supp. Aff. ¶10).

With respect to losses, AGI, within a one year period, incurred remedial and investigative expenses exceeding $5,000 that are directly attributable to defendants' unauthorized access to AGI's trade secrets and confidential information. Specifically, when AGI suspected the security breach in August 2005, it engaged its information technology ("IT") service provider to reset permissions, passwords, and security privileges on its server, costing over $5,000.  AGI hired Elysium Digital, LLC to confirm whether AGI's computer systems have been compromised. To date, the cost incurred by AGI for Elysium is over $5,000. (Smith Aff. ¶4, Exh. 2.) Also, in order to remedy the breach, AGI is had to purchase new firewalls, which require setup and configuration from its IT provider, totaling over $8,000.  Thus, the remedial and investigative expenses incurred totaled to date are well over $5,000. (Smith Aff. ¶¶2-4, Exhs. 1 and 2; Smith PI Aff. ¶80.)

Moreover, AGI's continues to suffer even more significant economic losses.  The Ninth Circuit has found that a company may collect damages for its lost business, business goodwill, and for the cost of restoring parts of its business that were affected by competitor's violations because all of those things constitute economic damages that are recoverable under Act.  See Creative Computing v Getloaded.com, LLC, 386 F.3d 930, 935 (9th Cir. 2004); but see *Nexans*

12

*Wires S.A. v. Sark-USA, Inc.*, supra, 166 Fed. Appx. 559.  As the court in Creative Computing explained, "[w]hen an individual or firm's money or property are impaired in value, or money or property is lost, or money must be spent to restore or maintain some aspect of a business affected by a violation, those are 'economic damages.'"  Id.  Here, AGI's reputation and goodwill have been harmed by the defendants' actions and AGI continues to lose business as a result.  While these losses are not readily quantifiable, the evidence demonstrates that they far exceed $5,000.  For example, the defendants cumulative acts have assisted them in interfering with the relationship between AGI and ETS, and AGI and Adobe.  The relationships with these two clients alone have earned AGI more than $1.25 million.  (Smith PI Aff. ¶82.)

Based on the evidence before the court, it is clear that the defendants intentionally accessed AGI's protected computer system without authorization resulting in a loss to AGI in an amount exceeding $5,000 within a one year period.  As such, there is no genuine issue as to any material fact as to the defendants liability under the CCFA.  Accordingly, AGI is entitled to a judgment as a matter of law on this count.

**C.**     **There Are No Genuine Issues Of Material Fact In This Case As To Defendants' Misappropriation of AGI's Trade Secrets**

There is no genuine issue of material fact the defendants misappropriated AGI's trade secrets.  The uncontroverted evidence reveals the defendants wrongfully acquired AGI's confidential information from AGI's customer list and customer scheduling database.  Accordingly, AGI is entitled to a judgment as a matter of law on this count.

Massachusetts common law and Mass. G.L. ch. 93, § 42 prohibit the misappropriation of trade secrets. A trade secret is "anything tangible or intangible, or electronically kept or stored, which constitutes, represents, evidences, or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula,

13

invention, or improvement." Mass. G. L. ch. 266, § 30(4).

Massachusetts common law provides for a remedy in tort for trade secret misappropriation. "The crucial issue to be determined in cases involving trade secrets . . . is whether the information sought to be protected is, in fact and in law, confidential." Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972). "A list of customers may properly constitute a trade secret, 'if the person entitled to a trade secret wishes to have its exclusive use in his own business, he must not fail to take all proper and reasonable steps to keep it a secret.'" Export Lobster Co., Inc. v. Bay State Lobster Co., Inc., No. 92-6348-E, 1994 Mass. Super. LEXIS 90, at *19 (Mass. Super. Ct. Oct. 31, 1994) citing J.T. Healy & Son Inc. v. James A. Murphy & Son. Inc., 357 Mass. 728, 736, 738 (1970).

In determining whether information is a trade secret or confidential in fact and in law, courts consider:

> "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

Jet Spray Cooler, Inc. v. Crampton, supra, 361 Mass. at 840.

Further, "Massachusetts law recognizes that a plaintiff may obtain relief from a defendant who wrongfully acquires plaintiff's confidential information, even if the information fails to qualify for protection as a trade secret." Jensen Tools, Inc. v. Contact East Inc., No. 92-10970-Z, 1992 U.S. Dist. LEXIS 14432, at *5 citing USM Corp. v. Marson Fastener Corp., 379 Mass. 90, 104 (1979). Massachusetts courts have found that a myriad of

14

business records are either confidential or are trades secrets. See id., at *2-3 (list of employees and the number of employees in each department among list of information considered confidential); Jillian's Billiard Club of America, Inc. v. Beloff Billiards, Inc., 35 Mass. App. Ct. 372, 375 (1993) (financial information, including accounting procedures are trade secrets); In re Civil Investigative Demand Addressed to Yankee Milk, Inc., 372 Mass. 353, 360 (Mass. 1977)(full membership lists protected as trade secret); United Rug Auctioners, Inc. v. Arsalen, No. CA03-0347, 2003 Mass. Super. LEXIS 189, at *15 (information concerning vendors, places of sale, times of sale, prices and mix of rugs, and financial information are confidential and proprietary).

In this case, it is undisputed that the information contained on AGI's customer list and its customer scheduling databases not known outside of the business and could not easily or properly be acquired or duplicated by others. (Silverman Dec. ¶¶4-10; Shaffstall Dec. ¶¶3-5; Smith PI Aff. ¶¶15-26.) The information consisted not only of names and addresses, but information relating to:

1. The name of the person in charge of discussing training services at each client company, as well as that person's e-mail, telephone number and address; and

2. Detailed information about the about each particular client including: the versions of software used by the client, the computer platform used, the client's historical record of hiring outside training services, the client's preferred payment methods, the client's billing terms, the client's pending inquiries, the dates inquiries were made and by whom within the client organization, individuals in charge of making decisions to hire outside consulting and training firms, where the client was met, and which instructors

have previously delivered training or provided consulting services. (Smith PI Aff. ¶19.)

This confidential information is subject to trade secret protection. (Silverman Dec. ¶¶4-10; Shaffstall Dec. ¶¶3-5; Smith PI Aff. ¶¶15-26.)

Second, in assessing the reasonableness of security precautions, the courts consider the following relevant factors:

> (1) the existence or absence of an express agreement restricting disclosure, (2) the nature and extent of security precautions taken by the possessor to prevent acquisition of the information by unauthorized third parties, (3) the circumstances under which the information was disclosed . . . to (any) employee to the extent that they give rise to a reasonable inference that further disclosure, without the consent of the possessor, is prohibited, and (4) the degree to which the information has been placed in the public domain or rendered 'readily ascertainable' by the third parties through patent applications or unrestricted product marketing.

USM Corp v. Marson Fastener Corp., 379 Mass. 90, 98 (1979). In determining whether the precautions taken were reasonable, "a plaintiff's conduct in maintaining its security measures against the conduct of a defendant in acquiring the information." Id. Thus, when assessing the reasonableness of the security precautions, the Court must consider the conduct of both parties.

As detailed above, AGI employed reasonable security measures in order to safeguard the secrecy of its trade secrets and proprietary information. The databases containing the customer list and customer scheduling were secure, password protected, and only accessible to a designated group of employees. Furthermore, only authorized employees were given special software that allowed for access to the secured databases, and there were procedures to revoke access privileges to the database records for employees who left AGI. The confidential business information that was misappropriated by the defendants was secured in

this manner.

Given the reprehensible actions by the defendants, AGI's security precautions are reasonable under Massachusetts law. On numerous occasions, defendants, without authorization, broke into AGI's databases. Defendants did this after Stipe's employment with AGI had ended and after her password had already been changed. There is no doubt that this access was unauthorized.

Additionally, defendants exceeded their authorization to confidential business information when they copied corporate financial information onto their own computers. Defendants misappropriated this information with the intent to use it in the development of a competitor business. Such reprehensible actions should weigh heavily when considering the reasonableness of the security precautions taken by AGI.

Finally, "the essence of an action for the wrongful use of trade secrets is the breach of a duty not to disclose or to use without permission confidential information acquired from another." Jet Spray Cooler, Inc v. Crampton, 377 Mass. 159, 165 (1972). Massachusetts case law "undoubtedly prescribes former employees from misappropriating the trade secrets learned during their former employment." Harvard Apparatus, Inc., v. Cohen, 130 F. Supp. 2d 161, 174 (D. Mass. 2001). As detailed above, defendants did not have permission to use or disclose AGI's trade secrets or confidential information.

Additionally, a person who "unlawfully takes, carries away, conceals, or copies, or by fraud or by deception obtains, from any person or corporation, with intent to convert to his own use, any trade secret" is liable under Mass. G.L. ch 93, §42 for misappropriation of trade secrets.

With regard to the Plaintiff's trade secret misappropriation claims, the defendants have

not contested that the information contained on the AGI's customer list and customer scheduling databases is confidential information subject to trade secret protection.[5]  Further, defendant Stipe *admitted* that on numerous occasions, without authorization, she improperly accessed AGI's customer databases.  (Stipe ¶14).  As explained above, Stipe was employed or acting on behalf of defendant Acquired at the time.  The evidence, therefore, conclusively demonstrates that the defendants are liable under Mass. G.L. ch 93, §42.  Accordingly, AGI is entitled to summary judgment on this count.

**D.     There Are No Genuine Issues Of Material Fact In This Case As To Defendants' Tortious Interference With AGI's Business Advantage**

There is no genuine issue of material fact that the defendants tortiously interfered with AGI's business advantage.  The uncontroverted evidence demonstrates that the defendants willfully interfered with an advantageous relationship between AGI and ETS in violation of Massachusetts law.

Massachusetts common law allows for recovery for damages caused by tortious interference with a business advantage.  A defendant tortiously interferes with a business advantage when (1) there was a business relationship or contemplated contract of economic benefit; (2) the defendants had knowledge of such a relationship; (3) the defendants interfered with the relationship through improper motive or means; and (4) plaintiff's loss of advantage directly resulted from defendants' conduct.  See American Private Line Services, Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992) citing, United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20, 12 (1990).

---

[5] Clark Edwards' assertion that Plaintiffs customer list is marketed to the general public on two different websites is unsupported by evidence and does not establish that the information is not confidential. (Smith PI Supp. Aff. ¶¶11-12).

An advantageous business relationship exists, even without a binding contract, when there was a "probable future business relationship anticipating a reasonable expectation of financial benefit." Id. In this case, it is undisputed that the defendants interfered with at least one specific AGI customer, ETS. In June 2004, while Stipe was still employed by AGI, defendant Stipe received sales order contracts for AGI from ETS. ETS has been an AGI client since 1998. Defendant Stipe never reported these June 2004 sales orders to AGI's management and accounting department. Instead, these AGI contracts were wrongfully diverted and converted by defendants Stipe, Novostat, Edwards, and Acquired. (Smith PI Aff. ¶¶84-94; Exhs. U-Y.)

Furthermore, defendants accessed the customer list database and contacted customers with whom AGI has an ongoing business relationship. AGI often has repeat customers and thus has a reasonable expectation that these customers would again retain its services. It is undisputed that defendants had knowledge of the business relationship between AGI and the customers in the customer list database. Because defendants acquired the information used to contact these customers from AGI's own database, there is no doubt that each defendant had actual knowledge of the relationship.

It is also undisputed that defendants interfered with AGI's business relationships through improper means and with improper motive. By contacting known customers of AGI using information unlawfully obtained, defendants employed improper means for interfering with AGI's business relationships. By intentionally accessing AGI's databases and confidential business information with the intent to take customers away from AGI, defendants acted with improper motive.

Finally, AGI's loss of advantage is the direct result of the defendants' actions. Had the

19

defendants not wrongfully acquired and used the information contained in AGI's customer list and customer scheduling databases, AGI would have maintained the business advantage they had with those customers. For example, had Defendants not interfered with the relationship between AGI and ETS, or AGI and Adobe, AGI would have maintained a business relationship both ETS and Adobe. The relationships with these two clients alone has earned AGI more than $1.25 million.

### III.  CONCLUSION

For all of the foregoing reasons, plaintiffs request that the Court enter summary judgment as to Counts I-IV of the Complaint against the defendants.

AMERICAN GRAPHICS INSTITUTE, INC.

By its attorneys,

Dated: November 22, 2006

/s/ Giovanna H. Fessenden
John L. DuPré   (BBO No. 549659)
Giovanna H. Fessenden (BBO No. 654681)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:   (978) 341-0136

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 22, 2006.

　　/s/ Giovanna H. Fessenden

657858