UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN GRAPHICS INSTITUTE, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>ACQUIRED LEARNING, INC., JUDEANN STIPE, DEAN NOVOSAT, CLARK EDWARDS, SAGE ADVICE, LTD. and CARL LEINBACH,<br><br>       Defendants. | Civil Action No. 05-11857 JLT |

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Plaintiffs American Graphics Institute, Inc. ("AGI") hereby sets forth their Local Rule 56.1 Statement of Material Facts.[1]

1. Plaintiff AGI is actively engaged in the business of providing consulting services and training courses related to computers, software, and electronics. (Smith PI Aff. ¶5.)

2. AGI and its predecessor, Cyber Solutions, Inc ("Cyber") have been in operation for ten years. (Smith PI Aff. ¶2.) During that time, AGI has built a strong and positive reputation among publishers and industry professionals. (Silverman Dec. ¶8; Shaffstall Dec. ¶2; Smith PI Aff. ¶15-17.)

---

[1] References to affidavits filed by the parties in this action are identified by the last name of the affiant followed by "Aff. ¶ __" or "Aff. Exh. __." References to the affidavits filed in support of Plaintiff's Motion for Preliminary Injunction, filed September 26, 2005 are identified by the last name of the affiant followed by "PI Aff. ¶ __" or "PI Aff. Exh. __." References to the Supplemental Affidavit of Christopher Smith in Connection with Plaintiff AGI's Supplemental Memorandum in Support of its Motion for Preliminary Injunction, filed on November 21, 2005 are identified by "Smith PI Supp. Aff. ¶__" or "Smith PI Supp. Aff. Exh.__."

3. AGI has amassed an extensive customer list, which is stored in a confidential customer database system, and customer scheduling database system. These database systems contain detailed confidential information regarding AGI's customers. The information includes the name, address, phone number, email address and credit card records for each customer. (Smith PI Aff. ¶19.)

4. The customer list and customer scheduling database also contain information on the software systems, training plans, software upgrade plans, the software versions being used by each customer as well as other technical information. ("Smith PI Aff. ¶¶19-20; Shaffstall Dec. ¶¶3-4.)

5. AGI's clients consider this information to be confidential and AGI has confidentiality and non-disclosure agreements with many of its clients that preclude the dissemination of the information contained in the customer database and customer scheduling database. (Smith PI Aff. ¶22, Exh. A; Silverman Dec. ¶5)

6. At all relevant times, the confidential client information stored in AGI's database systems has been secured. AGI employees are provided with access to AGI's database systems on a need-to-know basis. Only select AGI employees are provided access to these database records, and even those that are provided with access may only have tiered access privileges, with only management being provided full database access to the database systems. (Smith PI Aff. ¶24.)

7. Only sales personnel and some management are authorized to access AGI's database systems. The databases are secured by passwords, and

only authorized users are provided with the special software, password, or location of the databases. Even some senior management are not all provided access to this information. (Smith PI Aff. ¶25.)

8. Defendant Judeann Stipe was previously an employee of Cyber and AGI. As an employee of AGI, Stipe received an AGI laptop computer that she was to use while working for AGI. (Smith PI Aff. ¶30.) She was hired on April 10, 1996, as a part-time employee for Cyber, working two days per week providing clerical support. (Smith PI Aff. ¶27.)

9. In October of 1999, Stipe moved into a sales capacity, becoming AGI's only sales representative with the title of Director of Sales.

10. On January 11, 2004, Stipe was promoted to the position of Senior Sales Executive. (Smith PI Aff. ¶27.)

11. On June 1, 2004, Stipe became a part-time employee at her request. (Smith PI Aff. ¶27.)

12. On June 28, 2004, Stipe resigned. Stipes' last day with AGI was on July 1, 2004. (Smith PI Aff. ¶¶33-34.)

13. As a sales employee, Stipe was originally given "read only" access to AGI's customer database system in Woburn, Massachusetts. When she was promoted to a management position, however, she was provided with full access to AGI's customer database system. (Smith PI Aff. ¶31.)

14. As part of the AGI management team, Stipe held a position of trust and confidence. Stipe's full access to the customer database system enabled her to edit, export and delete records. To access the database system, Stipe was aware of the location, IP address, port number, password

3

        methods and security protocols used by AGI.  (Smith PI Aff. ¶31.)
Following Stipe's resignation from AGI, Stipe's password to the AGI's
customer database system was revoked.  (Smith PI Aff. ¶34.)

15. Defendant Clark Edwards is also a former employee of AGI.  Clark
Edwards is formerly the treasurer of AGI.  (Smith PI Aff. ¶39.)

16. Dean Novostat is a former consultant to AGI, and does business as Sage
Advice, Ltd.  (Smith PI Aff. ¶39.)

17. On July 19, 2004, defendants Edwards and Novosat formed the defendant
corporation, Acquired Learning, Inc. (ALI).  (Smith PI Aff. ¶39.)

18. Similar to AGI, defendant ALI is actively engaged in the business of
providing consulting services and training courses related to computers
and software. (Smith PI Aff. ¶36.)

19. Stipe advised AGI management personnel that the reason she was
resigning from AGI on June 28, 2004, was to become a full-time
"homemaker."  (Smith PI Aff. ¶33.)  In the fall of 2004, however, AGI
discovered that Stipe began working for defendant ALI, which was a
direct competitor of AGI.  (Smith PI Aff. ¶38.)

20. In the late fall of 2004, AGI also discovered that defendant ALI and its
partner, System Solutions, Inc. had copied significant portions of AGI's
website onto their respective websites without AGI's permission.  As a
result of this unauthorized use of AGI's copyrighted and proprietary
content, AGI and Christopher Smith initiated a copyright infringement
and unfair competition lawsuit in this Court against defendants ALI,
Judeann Stipe, Dean Novosat, Clark Edwards and the president of System

               Solutions, Inc., and System Solutions, Inc. and Richard Wein, Civil Action No. 04-12611-JLT. (Smith PI Aff. ¶40.)

21.      Though the course of discovery in the copyright infringement suit, in August 2005, AGI determined through documents produced by Carl Leinbach pursuant to a subpoena *duces tecum*, that Stipe had been directing Leinbach to access AGI's scheduling database to gather AGI's customer information for defendant ALI. (Smith PI Aff. ¶¶41-54, Exh. C.) After discovering this information in August 2005, Christopher Smith, president of AGI, became suspicious that Stipe and others may have attempted on other occasions to obtain AGI's confidential customer information from AGI's database systems. AGI investigated the possibility that Stipe and others may have attempted to access AGI's customer information on other occasions. (Smith PI Aff. ¶54.)

22.      On September 1, 2005, AGI engaged Elysium Digital, LLC, a forensic company, to analyze AGI's computer systems to determine if AGI's computer systems had been compromised. (Smith PI Aff. ¶54.)

23.      During the course of Christopher Smith's investigation, Stipe's AGI laptop was analyzed, and it became apparent that Stipe had logged-onto AGI's database system and exported customer database files to the laptop after she was no longer an employee of AGI. (Smith PI Aff. ¶57.)

24.      Following Stipe's resignation, in accordance with AGI's procedures, on July 1, 2004, Stipe's passwords were revoked. (Smith PI Aff. ¶34.) However, several times on July 2, 2004, Stipe accessed AGI's secured, password protected computers in Woburn, Massachusetts without

5

authorization, and took information from the database system. (Smith PI Aff. ¶¶58-67, Exh. D-L.)

25. At a time when Stipe was no longer an employee of AGI, she accessed AGI's secured server on July 2, 2004, for the purpose of wrongfully downloading and converting customer records. (Smith Aff. ¶¶5-7; Smith PI Aff. ¶59.) Specifically, on July 2, 2004, Stipe exported AGI's customer information for New York, Delaware, New Jersey, Maryland, and Washington D.C., downloading more than 22,500 customer records, including 14,000 e-mail records from AGI's secured servers and copied them to her laptop computer in Lancaster, PA. (Smith PI Aff. ¶¶55-69, Exhs. D-M.)

26. Defendant Stipe and others continued to access AGI's confidential customer list and customer scheduling databases on other occasions, without AGI's consent. (Smith PI Aff. ¶¶58-67, 72-79; Eaddy Aff. ¶13-23.)

27. Stipe, Novosat or Edwards accessed AGI's server on at least two other occasions in July and opened AGI's customer database system, accessing more than 63,000 confidential AGI customer records and other AGI confidential information. (Smith PI Aff. ¶71.) In particular, on July 12, 2004, and July 14, 2004, Judeann Stipe broke into the AGI customer database. The customer database is a password protected database stored on AGI's file server in Woburn, Massachusetts, and it was accessed from internet protocol ("IP") address 68.82.227.55, using software and computer equipment provided by Sage Advice, Ltd., which is a consulting

6

company operated by Dean Novosat. (Smith PI Aff. ¶¶72-74, Exhs. N, O; Eaddy Aff. ¶¶13-16.) None of these individuals were authorized to access the password protected database. (Smith PI Aff. ¶73.)

28. Despite defendant Stipe's denial of impropriety, she admitted to the July 12 and July 14, 2004 break-ins. As defendant Stipe stated, "*I did access the [AGI] customer database as stated July 12th & 14th from my home computer using a laptop I borrowed from Sage Advice, for approximately 4 minutes each day.*" (Emphasis added.) (Stipe Aff. ¶11).

29. On July 12, 2004, and again on July 14, 2004, Judeann Stipe sent e-mail messages to various AGI employees. The e-mail messages recorded the IP address of Stipe's computer, which is the same IP address, 68.82.227.55 of the computer that wrongfully accessed AGI's secured, password-protected servers on July 12, 2004, and July 14, 2004. This indicates that the same person or persons that unlawfully connected to AGI's database on July 12, 2004, and July 14, 2004, also sent these e-mail messages. (Eaddy Aff. ¶17-23, Exhs. 2-4; Smith PI Aff. ¶77.)

30. As a result of defendants' unlawful activities on AGI's server, AGI has incurred remedial and investigative expenses exceeding $5,000 that are directly attributable to defendants' unauthorized access to AGI's trade secrets and confidential information. Specifically, when AGI suspected the security breach, it engaged its information technology ("IT") service provider to reset permissions, passwords, and security privileges, spending well over $5,000. AGI also hired Elysium Digital, LLC to determine whether AGI's computer systems have been compromised. To

date, the cost incurred by AGI for Elysium is over $5,000. (Smith Aff. ¶¶3-4, Exhs. 1-2; Smith PI Aff. ¶80.)

31. Defendants Stipe, Novosat, Edwards and ALI acted purposely to acquire information to which they knew they were not entitled, for the purpose of securing unfair and unlawful profits for themselves. (Smith PI Aff. ¶79.)

32. Through their unauthorized access to AGI's computer databases, they obtained AGI's valuable confidential business information and other confidential proprietary information, and used the information to solicit new customers. (Smith PI Aff. ¶79.)

33. In 2004 and 2005, defendants Stipe, Novosat, Edwards, and Acquired Learning used wrongfully converted AGI customer records to send bulk-email (SPAM) to AGI customers. This list has been used repeatedly to send thousands of unsolicited SPAM messages to AGI customers. (Smith PI Aff. ¶81.)

34. As a direct result of defendants' unlawful actions, AGI has lost at least significant amounts of business from two substantial clients, Education Testing Services, Inc. ("ETS") and Adobe Systems, Inc. ("Adobe"). (Smith PI Aff. ¶82-94.) Financial records indicate that the relationship with these two clients exceeds $1.25 million. (Smith PI Aff. ¶82.)

35. Further, sometime in June 2004, while Stipe was still employed by AGI, defendant Stipe received sales orders and inquiries from ETS. ETS has been an AGI client since 1998. Defendant Stipe never reported these June 2004 sales orders to AGI's management and accounting department. Instead, these sales were wrongfully diverted and converted by defendants

8

Stipe, Novostat, Edwards, and ALI. (Smith PI Aff. ¶¶84-94; Exhs. U-Y.)

36. As a result of defendants' unlawful activities, AGI has incurred remedial and investigative expenses totaling approximately $34,000. (Smith Aff. ¶2.)

37. Specifically, in response to the breach of AGI's databases, AGI engaged its information technology ("IT") service provider to reset permission, passwords, and security privileges. AGI also had its IT service provider install new routers and firewalls totaling at least $8,597.29. In addition, AGI hired other service providers in its effort to remedy the damage done by the defendants. (Smith Aff. ¶¶3, 4; Exhs. 1-2)

38. The defendants cumulative acts have assisted them in interfering with the relationship between AGI and Education Testing Service, Inc. ("ETS"), and AGI and Adobe Systems, Inc. ("Adobe"). The relationships with these two clients alone have earned AGI more than approximately $1.25 million. (Smith PI Aff. ¶82; Exhs. S-T)

39. Adobe used to be one of AGI's most prominent clients. It is well known that Adobe is a multinational corporation. AGI's work with Adobe Systems was spread out over dozens of Adobe personnel throughout the country, such as in New York, New York, Seattle, Washington, and San Jose, California. AGI had stored its specific client contacts with Adobe Systems personnel in its customer database, which was hosted on the AGI server. Defendants had no previous contact with any of AGI's particular Adobe contacts. Defendants used AGI's particular Adobe contacts to usurp AGI's Adobe business opportunities. Defendant ALI has taken

9

over much of the work that AGI did for these particular clients at Adobe. Without defendant ALI's use of AGI's customer list, which identifies AGI's particular Adobe contacts, defendant ALI would not have been able to have made these sales to these particular Adobe contacts. (Smith PI Aff. ¶83)

40. In the month of June 2004, while receiving full time pay, vacation, and other benefits from AGI, Stipe received sales orders and inquiries from ETS and other inquiries. Orders received by Stipe in June 2004 were deliberately withheld from AGI's management and accounting department, and were wrongfully diverted and converted by Defendants Stipe, Novosat, Edwards, and ALI. (Smith PI Aff. ¶84.)

41. In particular, without AGI's management's knowledge, while Judeann Stipe was still working for AGI she used AGI's resources to make sales to AGI's customer ETS not for AGI, but for her new competing company, Defendant ALI. (Smith PI Aff. ¶85, Exh. U)

42. On June 21, 2004, Leslie Schenkel at ETS wrote in an e-mail to Judeann Stipe, at her AGI email address stating, "I'm ready to start booking everything. InDesign will be 6-7 classes during August OSX Demo/CS Suite overview for July 20th." Stipe was an employee of AGI at the time of this message. (Smith PI Aff. ¶86)

43. In violation of AGI's standard sales procedures, Judeann Stipe never entered this customer confirmation for the July 20, 2004 training or the August 6-7, 2004 training classes into AGI's customer or scheduling databases. Stipe intentionally did not enter this information into AGI's

|   |   |
|---|---|
|   | order entry system because she was intending to wrongfully divert this sale to her new employer, Acquired Learning. (Smith PI Aff. ¶87) |
| 44. | On June 28, 2004 Stipe wrote to Leslie Schenkel at ETS indicating that "I am working from home today. I will call you this afternoon. I have some other good news to share with you." The "good news" that Stipe shared is that she was going to work for the Defendant corporation ALI, and that she would deliver all of the July and August training for ETS through Defendant ALI – the training that Shenkel at ETS had previously requested that AGI deliver. (Smith PI Aff. ¶88.) |
| 45. | On June 28, 2004, the same day that Stipe shared her so-called "good news" with Leslie Schenkel at ETS, Stipe also submitted her resignation to AGI. (Smith PI Aff. ¶89.) |
| 46. | ETS had been a customer with AGI since at least April 9, 1998. ETS had provided AGI with over six years of business totaling over $150,000. Stipe diverted AGI's customer ETS to her new company, Defendant ALI. Consequently, AGI has lost all of its business with ETS. (Smith PI Aff. ¶90) |
| 47. | Immediately after resigning from AGI, Stipe instead went to work for Acquired Learning, which was formed in 2004 with the intent of offering services identical to those of AGI. (Smith PI Aff. ¶91) |
| 48. | Ten days after Judeann Stipe left AGI, on July 11, 2004, she e-mailed Leslie Schenkel at ETS using her new Acquired Learning e-mail account to "to thank her for the support," and tell her "It means a lot to me to have you follow me and help get things off to a great start." (Smith PI Aff. ¶91, |

11

Exh. V)

49.   On July, 12, 2004 and July 13, 2004, Judeann Stipe and Leslie Schenkel at ETS corresponded to discuss the new pricing options and new dates for the scheduled training.  (Smith PI Aff. ¶92, Exh.W)

50.   On July 16, 2004, Judeann directed Acquired Learning to invoice ETS for the training orders she received while employed at AGI and that she deliberately withheld from AGI. Acquired Learning issued invoice number 1 in the amount of $7,200 to ETS for Acquired Learning to deliver the InDesign Training on August 11, 12, 13, 16, and 17 which Schenkel had requested AGI to deliver.  This was 15 days after Stipe's resignation from AGI. In response, Acquired Learning issued invoice number 2 in the amount of $1,500 to ETS.  (Smith PI Aff. ¶93, Exhs. X-Y)

AMERICAN GRAPHICS  INSTITUTE, INC.,

By its attorneys,

Dated: November 22, 2006

/s/ Giovanna H. Fessenden
John L. DuPré   (BBO No. 549659)
Giovanna H. Fessenden (BBO No. 654681)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:   (978) 341-0136

658109

## CERTIFICATE OF SERVICE

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 22, 2006.

                                               /s/ Giovanna H. Fessenden